35624, 35625. HILTON CONSTRUCTION COMPANY, INC. v. ROCKDALE COUNTY BOARD OF EDUCATION et al.; and vice versa.

PER CURIAM.

We adopt the trial court's findings of fact, as follows: "The plaintiff [Hilton Construction Co., Inc.] is a Georgia

corporation authorized to do business in the State of Georgia. Plaintiff is also a taxpayer of the State of Georgia. Defendant Joiner is the Superintendent of the Rockdale County School System. Defendants Rogers, Sheppard, Almand, Blankship, Donaldson, Doster and Turner are the members of the Rockdale County Board of Education. Defendant Rockdale County School District is a political subdivision of the State of Georgia.

"In approximately May, 1978, the Rockdale County Board of Education issued invitations to bid on the Vocational Education wing addition to Heritage High School in Rockdale County, Georgia (hereinafter referred to as 'the project'). The project was to be built with a combination of local Rockdale County funds and funds from the State of Georgia through the Georgia Department of Education. The amount of state funds committed on the project is limited to four hundred thousand ($400,000.00) dollars with local funds making up the balance. In order to be eligible for the state funds, the Rockdale Board of Education was required to follow bidding procedures of the Georgia Board of Education, which required that 'the award of the contract will be made to the responsible bidder submitting the lowest acceptable bid.'

"On June 14, 1979, at 3:00 p.m., the bids submitted on the project were opened by the Rockdale Board of Education. Five bids were submitted with the plaintiff's bid being the lowest dollar bid at seven hundred eighteen thousand ($718,000.00) dollars. The second lowest dollar bid was submitted by Cube Construction Co., at seven hundred twenty thousand six hundred ($720,600.00) dollars. After opening the bids, the Superintendent of the Rockdale School System, Don J. Joiner, discussed the various bids and bidders with Willard N. Lamberson, the architect employed by the school system for the project...[1]

---

[1](Footnote added.) The content of Lamberson's conversation was not conveyed by Superintendent Joiner to the Board of Education prior to the award of the contract to Cube. In that conversation "Lamberson

"At the meeting of the Rockdale Board of Education on that same evening of June 14, 1979, at 7:30 p.m., all the bids were presented to the Board of Education. The architect Lamberson was not present. At the time of the meeting, none of the board members had any knowledge about Hilton. The board members did have some knowledge that Cube Construction Company, the second low bidder, whose bid was $720,600.00, was performing on other construction projects in Rockdale County in a manner satisfactory to the public officials involved with those projects. The board members considered Cube to be 'known' and Hilton to be 'unknown'. Both Hilton's bid and Cube's bid included 300 calendar days of construction time for completion of the project. The completed facility contemplated by the project was needed by the local board in late August, 1980, for use by the Rockdale County School System.

"Solely on the basis of the aforesaid conversation he had had with the project architect (Lamberson) earlier in the day [see footnote 1, above] . . . defendant Joiner recommended to the local board that it reject Hilton's bid and award the contract to Cube, the second low bidder. The local board accepted defendant Joiner's recommendation, rejected Hilton's bid, and accepted Cube's bid. The Board of Education and Cube Construction Co. entered into a contract for construction of the project on June 18, 1979.

"On June 22, 1979, plaintiff sent a letter to the Board of Education protesting the awarding of the contract to Cube Construction Co. and requesting a hearing before

---

informed Joiner that he had heard that the plaintiff was somewhat behind schedule on a project at Georgia Tech. Lamberson also stated to Joiner that he and Joiner were both familiar with Cube Construction Company's qualifications since it had done work for the defendants before. Lamberson said it 'is a question of the known (Cube) versus the unknown (Hilton),' and because of the importance of the project finishing on time, it was his recommendation that the project be awarded to the 'known' Cube Construction Co."

the Board of Education. On June 26, 1979, the plaintiff filed with the board a Motion for Reconsideration.[2] On July 2, 1979, plaintiff's Motion for Reconsideration was heard by the board, and Mr. Hill, plaintiff's President, and Mr. David V. Porter, plaintiff's attorney, were allowed to present their position to the board.[3]

"It should be noted that at the June 14, 1979, meeting, none of the board members had been provided with any information indicating any problems Hilton had on any construction projects it was then currently performing. At no time did the local board make any independent investigation of its own about Hilton. The only additional information provided to the board relative to Hilton was at the subsequent board meeting, in executive session, on July 2, 1979, at which time the board was told by defendant Joiner that Hilton was late on the Georgia Tech project. After obtaining this information on July 2, 1979, the board neither inquired about nor obtained any further information about whether Hilton was in fact late on the Georgia Tech job, nor did they learn or inquire about whether it was Hilton's fault if it was indeed late on the project at Georgia Tech. The board accepted the superintendent's statement at face value.

"At this later meeting on July 2, the board considered plaintiff's Motion for Reconsideration, and after discussing the matter among themselves and with Joiner decided to uphold their original decision."[4]

Plaintiff filed this action for mandamus and injunction in the Rockdale County Superior Court on July 6 and obtained a temporary restraining order against the

---

[2](Footnote added.) In order to be eligible for state funds, it was necessary that the contract be entered into before July 1, 1979. (The state's fiscal year ends on June 30 of each year.)

[3](Footnote added.) Plaintiff's attorney was not permitted to question the Board members at this meeting as to why the Board had rejected plaintiff's bid and awarded the contract to Cube.

[4](Footnote added.) No written decision was entered by the board as a result of its July 2nd meeting.

board, valid for 15 days. On July 24 the trial court entered an order overruling the defendant's motion to dismiss based on lack of standing and failure to exhaust administrative remedies. The court ordered that Cube Construction Co. be added as a defendant. The court ordered further that the temporary restraining order previously in effect be continued, conditioned upon plaintiff's posting a $50,000 bond to indemnify the defendants for losses caused by delay in the event plaintiff failed to prevail. This bond was not posted.

On August 24, following an evidentiary hearing, the trial court denied plaintiff's request for mandamus and injunction. Plaintiff appeals and the defendants cross appeal.

1. Plaintiff-appellant contends that the trial court erred in finding that the school board was authorized to reject its low bid. We agree.

The board rejected plaintiff's bid because plaintiff was "unknown" while Cube was "known." The State School Board regulations, sec. 40-3820(3)(L), which have the force and effect of law, Code Ann. § 32-653a, provide that projects using state funds will be awarded "to the responsible bidder submitting the lowest acceptable bid." (No argument is made that plaintiff's bid was not "acceptable" within the meaning of this regulation.) Whatever may be meant by the word "responsible," we are certain that being "unknown" does not show that a bidder is not "responsible." The board was not authorized to reject plaintiff's bid on the basis that plaintiff was "unknown."

The board argues that it was entitled to rely on the investigation performed by its agents. As the board acknowledges, the decision whether to accept or reject the bids was a decision to be made by the board. Here the board merely accepted the superintendent's recommendation to reject plaintiff's bid and to accept Cube's. This decision was not based upon facts reported to the board because ". . . at the June 14, 1979, meeting, none of the Board members had been provided with any information indicating any problems Hilton had on any construction projects it was then currently performing." As the trial court also found, at the time plaintiff's bid was

rejected " . . . none of the board members had any knowledge about Hilton." The trial court erred in concluding that the board exercised its own judgment in making the decision and that it did not simply accept the superintendent's recommendation. See *Lively v. Fulcher,* 244 Ga. 771 (262 SE2d 93) (1979).

Finally, the information conveyed to the board at its July 2 meeting that plaintiff was late on the Georgia Tech project did not establish that the plaintiff was not responsible. Being late on a project without any finding as to who caused the delay does not show that a bidder was not "responsible." For the reasons stated above we therefore conclude that the school board was not authorized to reject the low bid. This disposes of the issues raised on appeal by the plaintiff-appellant.

2. On cross appeal, the defendants enumerate several additional errors. First, they argue that Hilton does not have standing to challenge the award of the contract to Cube. They do not contend, however, that the competitive bidding procedures promulgated by the State Board of Education and relied on by Hilton were not legally binding on the school board in this case. State Board of Education Regulation, § 40-3820 (3) (L); see Op. Atty. Gen. 77-32 (1977). Hilton claims standing as the low bidder to assert a violation of these regulations. We find it clear beyond peradventure that Hilton has a legally protected interest created by state law which gives it standing to assert this violation. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U. S. 150 (90 SC 827, 25 LE2d 184) (1970); Funderburg Builders v. Abbeville County Mem. Hosp., 467 FSupp. 821, 824 (D.S.C. 1979). *Peeples v. Byrd,* 98 Ga. 688 (23 SE 677) (1896), relied on by Cube, is inapposite. In that case there was no requirement that the lowest bid be accepted and the court held that a rejected bidder had no standing to challenge the contract entered into or to require that the contract be awarded to itself. Language suggesting that the same rule would obtain where the law required the letting of the bid to the lowest responsible bidder is dicta and will not be followed.

3. Defendant-appellees also contend in their cross appeal that plaintiff failed to exhaust administrative

remedies under Code Ann. § 32-910. See *Surrency v. Dubberly*, 225 Ga. 735 (171 SE2d 306) (1969). In this particular case, however, the state board could not give Hilton complete relief. Hilton sought to have the Cube contract cancelled and a contract with Hilton executed in its place. The local board had already executed the advertised contract with Cube, and the state's fiscal year had closed. Code Ann. § 2-1603 (b). All appropriated state funds (except for certain mandatory appropriations) which remain unexpended and not contractually obligated at the expiration of the Appropriation Act, shall lapse. Const. Art. III, Sec. X, Par. V(c); Code Ann. § 2-1605 (c). Although the state board could have stayed the project pending the administrative appeal, the matter undoubtedly would have had to have been remanded to the local board for the taking of testimony of the board members and then have been appealed again to the state board. The state board could then have determined to withhold state funds from the Cube contract. If so, technically the state funds would have lapsed. However, the state board could not compel the local board to award the contract to Hilton and hence could not afford Hilton complete relief.

Hilton sought to restrain performance of the contract and to obtain the right to perform itself. The state board could give only the prior relief and that only pending the appeal. It could not replace Cube with Hilton in the contract documents, nor could it grant Hilton damages. "Impossibility or improbability of obtaining adequate relief by pursuing administrative remedies is often a reason for dispensing with the exhaustion requirement." Davis on Administrative Law 625, § 189 (1951). We decline to hold that Hilton is barred from relief by its failure to exhaust administrative remedies where those remedies were inadequate. United States Alkali Export Assn. v. United States, 325 U. S. 196, 210 (65 SC 1120, 89 LE 1554) (1954); see also *Surrency v. Dubberly,* supra, 225 Ga. at 736. However, we also decline to order injunctive relief at this point. See 42 AmJur2d 798, Injunctions, §§ 56-60. Hilton declined to post bond to preserve the status quo and although Hilton could not have obtained all the relief it sought from the state board, such an appeal would have

placed state funding in jeopardy and that undoubtedly would have resulted in construction not commencing. If construction were not well underway, Hilton might well be entitled to be awarded the contract under the facts of this case once the administrative appeal reached the courts. But at this late date, equity will not intervene where Hilton's failure to post bond and exhaust administrative remedies has rendered equitable relief draconian. Hilton's failure to exhaust administrative remedies, however, had no effect on its right to damages.[5]

4. The board argues that mandamus will not lie to void the contract with Cube. We agree. Mandamus is the remedy for inaction of a public official. "Mandamus is not the proper remedy to compel 'the undoing of acts already done or the correction of wrongs already perpetrated, and . . . this is so, even though the action taken was clearly illegal.' 38 CJ 592, § 70." *Wilson v. Sanders,* 222 Ga. 681, 685 (151 SE2d 703) (1966). See also *Coastal Service, Inc. v. Jackson,* 223 Ga. 238, 239 (154 SE2d 365) (1967). The case of *City of Atlanta v. Wright,* 119 Ga. 207 (45 SE 994) (1903), relied on by Hilton, is inapposite because in that case there was no contract with a third person to be voided. We affirm the denial of the writ of mandamus.

5. The board argues that equitable relief is not available because plaintiff had adequate remedies at law, namely, (1) appeal to the State Board of Education and (2) damages at law. The first of these was decided adversely to the board in Division 3, above. As we also determined in that division, injunctive relief may well be inappropriate at this time. Hence we leave the question of damages versus injunctive relief for determination by the trial court in light of this opinion.

*Judgment reversed in case 35624; judgment affirmed*

---

[5]Although the exhaustion rule has perhaps most often been applied in equity cases where it may be viewed as one aspect of the doctrine of "adequate remedy at law", the rule itself has long applied to cases at law. See Myers v. Bethlehem Shipbuilding Corp., 303 U. S. 41, 51 n. 9 (58 SC 459, 82 LE 638) (1938).

*in case 35625. Jordan, P. J., Hill, Bowles and Marshall, JJ., and Judge Charles L. Weltner, concur. Undercofler, C. J., and Nichols, J., dissent. Clarke, J., not participating.*

ARGUED NOVEMBER 20, 1979 — DECIDED MARCH 18, 1980 — REHEARING DENIED MARCH 28, 1980.

*David W. Porter, James M. Saunders,* for appellant. *Vaughn & Barksdale, Clarence Vaughn, Weekes, Candler, Sams & Weatherly, Gary M. Sams, R. Phillip Shinall, III,* for appellees.