S90A0570. AMDAHL CORPORATION v. GEORGIA
DEPARTMENT OF ADMINISTRATIVE SERVICES et al.
(398 SE2d 540)

BELL, Justice.

This case raises several issues regarding the rights of appellant Amdahl Corporation (Amdahl), a rejected bidder for a state contract to provide computer equipment to the Georgia Department of Administrative Services (DOAS), to sue DOAS for alleged violations of state procurement laws. One issue is whether Amdahl may seek to have the contract that DOAS entered into with the winning bidder (appellee International Business Machines Corporation (IBM)) cancelled pursuant to OCGA § 50-5-79.[1] Other issues are whether

---

[1] OCGA § 50-5-79 provides as follows:

Whenever any department, institution, or agency of the state government required by this part [OCGA Title 50, Ch. 5, Art. 3, "State Purchasing," Pt. 1, "General Authority, Duties, and Procedure"] and the rules and regulations adopted pursuant thereto applying to the purchase of supplies, materials, or equipment through the Department of Administrative Services shall contract for the purchase of such supplies, materials, or equipment contrary to this part or the rules and regulations made hereunder, such contract shall be void and of no effect. If any such department, institution, or agency purchases any supplies, materials, or equipment contrary to this part or the rules and regulations made hereunder, the executive officer of such department, institution, or agency shall be personally liable for the cost thereof; and, if such supplies, materials, or equipment are so unlawfully purchased and paid for out of the state funds, the amount thereof may be recovered in the name of the state in an appropriate action instituted therefor.

Amdahl, as a rejected bidder, has standing under general principles of law to sue DOAS for a violation of the rules and regulations that DOAS required all bidders and itself to comply with; whether, if Amdahl has standing, it is entitled to seek equitable relief; whether, if Amdahl is entitled to seek equitable relief, the trial court erred in granting summary judgment to appellees on Amdahl's request for equitable relief on the ground that Amdahl has an adequate remedy at law — a suit for money damages; and whether Amdahl can pursue a claim for relief under 42 USC § 1983 against DOAS and its commissioner.

We find that OCGA § 50-5-79 does not apply to this case; that Amdahl, as a rejected bidder, does have standing to sue DOAS under general principles of law; that Amdahl is entitled to seek equitable relief; that the trial court erred in granting summary judgment to appellees on Amdahl's request for equitable relief; and that Amdahl was not entitled to relief under 42 USC § 1983.

In November 1988, appellee DOAS issued a Request for Proposal (RFP),[2] requesting bids on two new large-scale computer mainframes to provide data-processing services to user agencies served by DOAS. The RFP provided that the DOAS reserved the "right to cancel the RFP at any time, or to reject any or all proposals submitted in response hereto"; that the terms of the Georgia Vendor Manual, which contains rules and regulations adopted by the DOAS, were included within the terms of the RFP; and that the "basis for final selection" would be determined by a price-performance formula, with the performance judged by a "benchmark" — a test simulating the state's workload — that each bidder was required to run. The best performance in the benchmark would be determined by which vendor had the fastest "run time," which would be the period from the start of the first task to the end of the final task, as measured in "wall-clock" time. Under the formula, a faster benchmark time could offset a higher bid.

Three computer vendors, International Business Machines (IBM), National Advanced Services, Inc. (NAS), and Amdahl responded to the RFP.

The benchmarks were run in January 1989. IBM ran the benchmark in the fastest time, with Amdahl second, and NAS third. DOAS

---

[2] Under OCGA § 50-5-67 (a) the DOAS may elect to enter a contract by competitive sealed proposals instead of competitive sealed bidding, see § 50-5-67 (b), when the DOAS determines that competitive sealed bidding "is either not practicable or not advantageous to the state," § 50-5-67 (a). Under the competitive-sealed-proposal method, the award "shall be made to the responsible offeror whose proposal is determined in writing to be the most advantageous to the state, taking into consideration price and the evaluation factors set forth in the request for proposals. No other factors or criteria shall be used in the evaluation." Id. (a) (7).

awarded the contract to IBM, whose bid was higher than Amdahl's, and planned to cut over to the new system in June 1989. Amdahl sent letters to DOAS protesting the award of the contract to IBM, but after a hearing in front of the DOAS purchasing agent for the RFP, these protests were denied.

On June 21, 1989, Amdahl filed a four-count complaint against DOAS and its commissioner. IBM was subsequently allowed to intervene as a defendant. Amdahl contended that DOAS violated the benchmark rules by allowing IBM to adjust the User Time Interval ("UTI parameter") or "wait times" between tasks in the benchmark test. The UTI parameter simulated delays by computer users in responding to information on the computer screens and in entering data. Amdahl alleged that IBM, with DOAS' approval, drastically reduced the wait times, thus enabling IBM to offset the faster processing speed of Amdahl's system. Furthermore, Amdahl alleged that under the price-performance formula set forth in the RFP, IBM's faster run time offset IBM's significantly higher bid. Amdahl thus contended that DOAS' award to IBM was directly attributable to IBM's modification of the benchmark test, in violation of the rules governing the benchmark.

In Count One of its complaint, Amdahl sought declaratory relief, alleging that DOAS violated the state procurement laws; the rules and regulations promulgated thereunder; and the terms of the RFP. Amdahl alleged that DOAS acted arbitrarily and capriciously by failing to require IBM to comply strictly with the RFP and the rules applying thereto. Because of these alleged violations, Amdahl contended that DOAS' contract with IBM was void under either § 50-5-79, the Georgia Vendor Manual, or applicable rules of Georgia law.

In Count Two Amdahl sought injunctive relief, seeking to prevent DOAS from proceeding further with its contract with IBM, and requesting that the court order DOAS to re-bid the contract or re-run the benchmark. Amdahl alleged that without injunctive relief it would suffer irreparable harm; that there was a substantial probability that Amdahl would prevail in the lawsuit; and that Amdahl did not have an adequate remedy at law.

In Count Three, Amdahl prayed for damages of not less than $1,000,000.

In Count Four, Amdahl alleged that DOAS had violated Amdahl's civil rights under 42 USC § 1983 by unconstitutionally and intentionally applying different rules to competing vendors and by permitting IBM to modify the rules to its benefit, in violation of state procurement laws. Amdahl also asserted that DOAS failed to provide adequate due process, because DOAS had an allegedly biased person — the purchasing agent for this RFP — act as the hearing officer on Amdahl's protest. Amdahl requested compensatory and punitive

damages, as well as attorney fees and injunctive relief.

Following its answer, DOAS moved for summary judgment on Counts One, Two, and Four of Amdahl's complaint. DOAS contended, inter alia, that § 50-5-79 only applied to contracts entered into by state agencies required to purchase through DOAS and not to contracts made by DOAS for its own purchases, and that, even if § 50-5-79 did apply, only the state had standing to sue under the statute; that Amdahl, as a rejected bidder, did not have standing to sue DOAS for violations of procurement laws; that Amdahl was not entitled to seek equitable relief; that, even if Amdahl was entitled to seek equitable relief, Amdahl's claims for equitable relief were barred either because the claims were moot, as DOAS had already installed the two mainframe computers that were the subject of the contract with IBM, or because Amdahl had an adequate remedy at law; and that DOAS and its commissioner are not "persons" within the meaning of 42 USC § 1983, and thus are not subject to a § 1983 claim.

On October 16, 1989, the court held a hearing on DOAS' motion for summary judgment. At the end of the hearing, the court stated that it would grant DOAS' motion. The court orally ruled that only the state had standing to invoke the provisions of § 50-5-79; that Amdahl was not entitled to equitable relief, as a suit for damages was an adequate remedy at law;[3] and that the state and its commissioner were not "persons" within the meaning of 42 USC § 1983. That same day, the court entered its written order granting DOAS' motion.[4] The order contains no findings of fact or conclusions of law.

Amdahl appealed to this court. We now affirm in part and reverse in part.

1. Amdahl first contends that the trial court erred in granting summary judgment to appellees, because, Amdahl argues, § 50-5-79 applies to contracts made by DOAS for its own purchases, and permits Amdahl, as a rejected bidder, to have the contract with IBM cancelled.

As previously noted, OCGA § 50-5-79 provides that

Whenever any department, institution, or agency of the state government required by this part [OCGA Title 50, Ch. 5, Art. 3, "State Purchasing," Pt. 1, "General Authority, Duties, and Procedure"] and the rules and regulations adopted

---

[3] The court orally stated that it would not deny Amdahl's equitable claims because of mootness. The court appeared in complete agreement with the statement by Amdahl's attorney that the DOAS had previously agreed that it would proceed at its own risk with the installation of IBM's computers, thus obviating the need for an emergency ruling on Amdahl's complaint.

[4] Amdahl subsequently dismissed Count Three of its complaint (its claim for damages) without prejudice.

pursuant thereto applying to the purchase of supplies, materials, or equipment through the Department of Administrative Services shall contract for the purchase of such supplies, materials, or equipment contrary to this part or the rules and regulations made hereunder, such contract shall be void and of no effect. If any such department, institution, or agency purchases any supplies, materials, or equipment contrary to this part or the rules and regulations made hereunder, the executive officer of such department, institution, or agency shall be personally liable for the cost thereof; and, if such supplies, materials, or equipment are so unlawfully purchased and paid for out of the state funds, the amount thereof may be recovered in the name of the state in an appropriate action instituted therefor.

Amdahl argues· that the DOAS is a "department, institution, or agency" of the state, and that the statute thus voids any contract DOAS enters in violation of Title 50, Chapter 5, Article 3, Part 1, or of any rules and regulations made thereunder. Amdahl further argues that, as a frustrated bidder, it is entitled to maintain an action under § 50-5-79. Appellees counter that the statute only applies when state agencies that are required to purchase through the DOAS enter contracts in violation of state purchasing rules, and that the plain language of the statute only permits the state to bring suit to enforce the provisions of the statute.

We first address whether § 50-5-79 applies to contracts that DOAS enters for its own purchases. The first sentence of the statute is incomplete, as it does not tell us what the state agencies, departments, and institutions are required to do.[5] However, we think that the appellees' interpretation of the statute — that the statute only applies to contracts entered by state agencies that are *required to purchase through DOAS* — is the most logical interpretation. First, one of the chief purposes of Part 1 of Article 3 of Chapter 5 is to promote centralized purchasing — the requirement that state agencies, departments, and institutions purchase their supplies and materials through DOAS. See § 50-5-50 (1, 2). The interpretation of the statute urged by appellees furthers that purpose, by giving the state a mechanism by which it can force the heads of the different departments and agencies of the state to make their departments' and agencies' purchases through DOAS.

Moreover, if we were to construe the statute to apply to DOAS

---

[5] OCGA § 50-5-79 refers to "any department, institution, or agency of the state government *required by* this part and the rules and regulations adopted pursuant thereto . . . shall contract . . ." (emphasis supplied), without expressly indicating what is "required."

contracts, we would render the mention of DOAS in the statute meaningless. If the statute were intended to apply to DOAS contracts, it would simply have provided that "whenever any department, institution, or agency of the state government shall contract for the purchase of supplies, materials, or equipment contrary to this part or the rules and regulations made hereunder, such contract shall be void and of no effect."

For the foregoing reasons, we conclude that § 50-5-79 only applies to contracts entered by agencies required to purchase supplies through DOAS. We thus need not address whether Amdahl has standing to enforce the provisions of § 50-5-79.

2. Amdahl next contends that the trial court erred in granting summary judgment, because Amdahl has standing under general principles of law to sue DOAS for violation of procurement rules. We conclude Amdahl does have standing.

Amdahl relies on lowest-responsible-bidder cases such as *Hilton Constr. Co. v. Bd. of Education*, 245 Ga. 533 (266 SE2d 157) (1980). In that case, Hilton claimed standing as the low bidder to assert a violation of competitive bidding procedures. We concluded Hilton had standing, finding

> it clear beyond peradventure that Hilton has a legally protected interest created by state law which gives it standing to assert this violation. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U. S. 150 (90 SC 827, 25 LE2d 184) (1970); Funderburg Builders v. Abbeville County Mem. Hosp., 467 FSupp. 821, 824 (D.S.C. 1979). [*Hilton Constr. Co.*, supra, 245 Ga. at 538.]

DOAS argues, however, that the lowest-responsible-bidder cases relied on by Amdahl are inapposite here, because this case involves a competitive sealed proposal under § 50-5-67 (a), pursuant to which, DOAS contends, it had broad discretion to award the contract to the bidder it deemed most advantageous to the state. See § 50-5-67 (a) (7). DOAS appears to contend that because of this discretion, Amdahl does not have standing to sue for alleged violations of procurement laws. We disagree, for several reasons.

First, even in lowest-responsible-bidder cases, DOAS has discretion regarding which bidder is the "lowest responsible bidder" and should be awarded the contract. See § 50-5-67 (b); 1974 Op. Att'y Gen. 74-16. *Hilton Constr. Co.*, supra, is thus consistent with the principle that a rejected bidder has standing even if a procurement agency has some discretion regarding the final award.

Moreover, we find that Amdahl satisfies the two-part test of standing set forth in *Assn. of Data Processing Service Organizations*,

supra, 397 U. S., on which we relied in *Hilton Constr. Co.*, supra. Under that two-fold test, a complainant has standing if the complainant alleges that the challenged action has caused him injury in fact, id. at 152, and if the complainant is asserting an interest "arguably within the zone of interests to be protected . . . by the statute," id. at 153. This standard has been followed by other courts in determining standing in frustrated-bidder cases. E.g., *B. K. Instrument, Inc. v. United States*, 715 F2d 713, 717-723 (2nd Cir. 1983); *Merriam v. Kunzig*, 476 F2d 1233, 1240-1243 (3rd Cir. 1973). We now turn to applying these rules to the instant case.[6]

We first find that Amdahl has standing under the injury-in-fact test. Although DOAS is correct that § 50-5-67 (a) grants it discretion to determine which proposal is most advantageous to the state, in the instant case the RFP provided that the bidder with the lowest price-performance formula would be awarded the contract. It is undisputed that DOAS is bound by the terms of the RFP. Amdahl alleges that it would have had the lowest price-performance formula if not for DOAS' alleged arbitrary conduct, and would thus have been entitled to be awarded the bid. Amdahl thus asserts the loss of a profitable contract. Moreover, Amdahl also suffered the loss of about $200,000 in preparation costs. For both these reasons we find that Amdahl satisfies the injury-in-fact test. *Merriam v. Kunzig*, supra, 476 F2d at 1241.

We now consider the zone-of-interests test. We conclude Amdahl also has standing under this test.

OCGA § 50-5-50 provides that the purposes and policies of state procurement laws are, inter alia:

> (3) To ensure openness and accessibility by all qualified vendors to the state's purchasing processes so as to achieve the lowest possible costs to the state through effective competition among such vendors;
>
> . . .
>
> (5) To ensure the fair and equitable treatment of all persons who deal with the procurement system of the state;
>
> . . .
>
> (7) To provide safeguards for the maintenance of a procurement system of quality and integrity.

---

[6] Various courts and commentators have questioned whether the zone-of-interests test is still a viable part of the U. S. Supreme Court's standing jurisprudence. E.g., *B. K. Instrument, Inc.*, supra 715 F2d at 719; 4 Davis, Administrative Law Treatise, § 24.17 at 273-280 (2d ed. 1983). However, we need not decide that question in this case, because we conclude Amdahl meets both the injury-in-fact and zone-of-interests tests.

Based on these policy statements by our General Assembly, we conclude that, even in competitive sealed proposals under § 50-5-67 (a), a rejected bidder who alleges the proposal was conducted in an arbitrary and unfair manner falls within the zone of interests to be protected by our procurement laws. To hold otherwise would discourage bidders such as Amdahl from submitting proposals in the future, and would deprive state taxpayers of having the advantage of competition in awarding state contracts. See *B. K. Instrument, Inc.*, supra, 715 F2d.

3. Amdahl next asserts that the trial court erred in granting summary judgment on its claims for equitable relief. Amdahl contends that under Georgia law it is entitled to seek equitable relief for violations of procurement laws, and that it does not have an adequate remedy at law and is thus entitled to equitable relief. We conclude the trial court erred in granting summary judgment to appellees on Amdahl's claims for equitable relief.

First, contrary to DOAS' assertion that the acts of executive officers in awarding bids cannot be enjoined, this Court, as have numerous other courts,[7] has recognized that equitable relief is available to frustrated bidders who allege violations of procurement laws. E.g., *Hilton Constr. Co.*, supra, 245 Ga. at 538-540.

Having decided that Amdahl is entitled to seek equitable relief, we next consider whether the trial court erred in granting summary judgment on the ground Amdahl has an adequate remedy at law. Amdahl argues that lost profits are not recoverable in frustrated-bidders cases, and that, as it is limited to a damage recovery of only bid preparation costs, its legal remedy is inadequate as a matter of law. Although Amdahl is correct that a frustrated bidder may not recover lost profits, *City of Atlanta v. J. A. Jones Constr. Co.*, 260 Ga. 658 (1) (398 SE2d 369) (1990), we are unwilling to conclude that Amdahl's legal remedy is inadequate as a matter of law. However, we do conclude that the trial court erred in concluding, by way of summary judgment, that Amdahl's legal remedy is adequate.[8] We find that the record requires that the trial court address, as a matter of substance, whether equitable relief is appropriate.[9] We therefore remand the

---

[7] E.g., *Funderburg Builders*, supra, 467 FSupp. at 825 (4); *B. K. Instrument, Inc.*, supra, 715 F2d at 730 (14); *Aqua-Tech, Inc. v. Como Lake Protection & Rehabilitation Dist.*, 239 NW2d 25, 30 (9) (Wis. 1976); *State Mechanical Contractors v. Village of Pleasant Hill*, 477 NE2d 509, 511 (4) (Ill. App. 4th Dist. 1985).

[8] See *Funderburg Builders*, supra, 467 FSupp. at 825 (4), holding that recovery of bid preparation costs was an inadequate legal remedy.

[9] On appeal appellees argue that the doctrines of sovereign and qualified immunity prohibit Amdahl from suing DOAS for equitable relief. These issues, however, were not raised below, and we decline to address them at this time. Appellees may, if they choose, raise the issues on remand.

case to the trial court for it to determine this issue. See generally *Beaulieu of America v. L. T. Dennard &c.*, 253 Ga. 21 (1, 2) (315 SE2d 889) (1984), regarding the disadvantages of a trial court entering summary judgment on a claim for equitable relief.

4. Regarding Amdahl's claim for relief under 42 USC § 1983 we conclude, based on *Will v. Michigan Dept. of State Police*, ____ U. S. ____ (109 SC 2304, 105 LE2d 45) (1989), that the trial court properly granted summary judgment to DOAS and its commissioner. See also *City of Atlanta*, supra, p. 659 (2).

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunt, J., who concurs in the judgment only, and Fletcher, J., who dissents as to Division 3.*

HUNT, Justice, concurring.

I write separately because I disagree with the implication of the majority holding in Division 3 of the opinion. It implies that, based on *Beaulieu of America v. L. T. Dennard &c.*, 253 Ga. 21 (315 SE2d 889) (1984), a trial court is unable to dispose of issues relating to equitable relief other than by a resolution of questions of fact. This arises because the reversal of summary judgment implies the existence of genuine fact issues. The question of whether to grant equitable relief, such as an injunction, is a matter to be resolved by the trial judge in the exercise of his or her discretion. Moreover, there are bars to the grant of equitable relief about which there may be no factual issue.

In *Beaulieu*, supra, the equitable defense was laches, and concerning its factual characteristics, this court said:

> " '. . . [V]arious things are to be considered, notably the duration of the delay in asserting the claim, and the sufficiency of the excuse offered in extenuation thereof, whether during the delay the evidence of the matters in dispute had been lost or become obscure, whether plaintiff or defendant was in possession of the property in suit during the delay, whether the party charged with laches had an opportunity to have acted sooner, and whether the party charged with laches acted at the first possible opportunity. . . .' "

> Laches is peculiarly a factual defense, the resolution of which will rest in the sound discretion of the trial judge. . . .

The bar asserted against the claim for equitable relief in this case, unlike *Beaulieu*, is not laches, but the availability of an adequate legal remedy. Following our resolution of *City of Atlanta v. J. A. Jones Constr. Co.*, 260 Ga. 658 (398 SE2d 369) (1990), no fact issue remains as to what the legal remedy is. It is the return to the unsuc-

cessful and wronged bidder of its costs connected with the preparation of its bid. Likewise, there is no fact issue in this case concerning what the bidder seeks by way of equitable relief. To decide whether the legal remedy is indeed *adequate* is certainly a discretionary function to be exercised by the trial judge. It is not, however, a fact-finding function (or "substance"-finding!) as is suggested by the reversal of summary judgment in this division. Because the trial court did not have the benefit of the holding in the *Jones* case at the time it ruled, remand is necessary.[10]

DECIDED DECEMBER 5, 1990 —
RECONSIDERATION DENIED DECEMBER 20, 1990.

*Sutherland, Asbill & Brennan, Charles T. Lester, Jr., Richard L. Robbins, William R. Wildman,* for appellant.

*Michael J. Bowers,* Attorney General, *Lawson & Davis, G. Thomas Davis, King & Spalding, William A. Clineburg, Jr., Michael Eric Ross,* for appellees.

*Dow, Lohnes & Albertson, Terrence B. Adamson, Peter C. Canfield, Carolyn Y. Forrest,* amici curiae.

---

[10] Assume this issue returns to us following the trial court's decision on remand. Will we be confined to a consideration of whether the trial court abused its discretion or can we decide the remedy is either adequate or inadequate "as a matter of law?" I doubt we would be precluded from the latter.