67461. SEPULVADO et al. v. DANIELS LINCOLN-MERCURY, INC.

CARLEY, Judge.

Appellants Doris and Ralph Sepulvado entered into an agreement to purchase a 1981 Mercury Cougar from appellee for a certain sum plus their 1981 Isuzu pickup truck. A security interest covering the Isuzu trade-in was held by General Motors Acceptance Corporation (GMAC) securing an indebtedness in the amount of $4,900.16. Following the consummation of the sale, a disagreement arose between appellee and appellants as to who was to pay the balance of the debt secured by the vehicle. To obtain a clear title to the Isuzu truck, appellee paid the amount owed to GMAC and subsequently initiated the instant suit against appellants, seeking recovery of the $4,900.16, plus interest and attorney fees. Following a jury trial, judgment was entered on a verdict in favor of appellee. Appellants appeal from the denial of their motion for a new trial.

1. Appellants' first enumeration of error raises the general grounds. However, appellants present no specific argument, cite no authority, and make no reference to the transcript in support of this enumeration. Therefore, it is deemed abandoned. Court of Appeals Rule 15 (c) (2); *Taft v. State*, 154 Ga. App. 566 (1) (269 SE2d 69) (1980); *Glennville Hatchery v. Thompson*, 164 Ga. App. 819, 826 (10) (298 SE2d 512) (1982).

2. Appellants assert that the trial court erred in denying their motion for a directed verdict as to appellee's claim for attorney fees, which claim was being sought on the basis of appellants' bad faith. "The expenses of litigation generally shall not be allowed as a part of the damages; but where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." OCGA § 13-6-11. " '[T]he elements of bad faith which will authorize expenses of litigation in an *ex contractu* action are those acts relative to the conduct of entering into a contract or to the transaction and dealings out of which the cause of action arose . . . but do not have reference to the motive with which the defendant defends an action after a cause of action occurred.' " *Brooks v. Steele*, 139 Ga. App. 496, 498 (229 SE2d 3) (1976). There is evidence to support a finding that during the negotiations for the purchase of the Mercury Cougar, appellants falsely misrepresented to appellee that they would pay the indebtedness owed to GMAC and would deliver a clear title to the Isuzu truck to appellee. Since there is some evidence to support the award of attorney fees, this court must affirm. *Ken-Mar Constr. Co. v. Bowen*, 245 Ga. 676 (266 SE2d 796) (1980).

3. Appellants assert that the trial court erred in refusing to give their requested charge on mistake of fact or of law. Appellants are correct that a contract cannot be enforced if the consideration upon which it is based was given as a result of a mutual mistake of fact or of law. OCGA § 13-5-4. However, in the instant case, there is no evidence of such a mutual mistake as would support appellants' requested charge. One relying on mutual mistake as a defense against his obligation under a contract "must show the particular mistake and illustrate how it occurred, why the terms of the contract which [it is] insist[ed] should have been asserted were left out, or how terms not agreed upon came to be inserted. [Cits.]" *Mangham v. Hotel & Restaurant Supply Co.*, 107 Ga. App. 619 (1) (131 SE2d 74) (1963). Appellants do not assert that the written contract which they signed omitted terms agreed upon or included terms not agreed upon with reference to the obligation to satisfy the indebtedness secured by the vehicle to be traded in. Nor do appellants contend that there was an oral agreement that appellee, rather than themselves, would bear this financial responsibility. Indeed, Doris Sepulvado testified that appellee's agents never represented that appellee would pay the indebtedness owed to GMAC. In short, the evidence of the "mutual mistake" at best relates to nothing more than appellants' failure to understand that, under the agreement which had been reached, appellee was looking to them to pay the indebtedness and supply clear title to the trade-in vehicle. "It is the duty of contracting parties to inform themselves with reference to the subject matter about which they desire to

contract; if they fail to do so and a mistake is made owing to their own ignorance and failure to inform themselves, then any injury results from their own conduct. [Cit.]" *Gulden v. Newberry Wrecker Service*, 154 Ga. App. 130, 132 (267 SE2d 763) (1980). "Relief is not available on the basis of a unilateral mistake in the absence of fraud or inequitable conduct or other special circumstances. [Cit.]" *Sellers v. ALCO Finance*, 130 Ga. App. 769, 770 (4) (204 SE2d 478) (1974). The trial court did not err in refusing to give the requested charge.

4. Appellants assert that the trial court erred in not giving three separate instructions on the requirement that there must be a meeting of the minds among parties to a contract. Our review of the record reveals that the charge as given by the trial court adequately embraced the principles set forth in appellants' refused requests. "[I]t will not be error to refuse to give a requested charge where the substance of the request is covered in the general instructions given. [Cits.] Care must be exercised to see that requested charges on the same point will not subject the court's charge to the criticism that it is unduly repetitious; the fact that one party happened to request the repetitious charges will not immunize the charge from criticism. [Cit.] . . . A requested charge should be given only where it embraces a correct and complete principle of law which has not been included in the general instructions given and where the request is pertinent and adjusted to the facts of the case." *Gates v. Southern R. Co.*, 118 Ga. App. 201, 203 (3a) (162 SE2d 893) (1968). We find no error in the trial court's refusal to give the requested charges.

5. Appellants further assert that the trial court erred in refusing to give two of their written requests to charge on accord and satisfaction. The evidence shows that on April 5, after some initial negotiation over the purchase of the Mercury Cougar, the parties agreed upon a "bottom line figure" of $3,600 plus tax, which was the figure representing the amount to be paid by appellants for the Cougar in addition to the Isuzu trade-in. The following day appellant Doris Sepulvado issued a check to appellee for $3,744. On the check were written the words "IN FULL." Appellants assert that this check represents evidence of an accord and satisfaction.

OCGA § 13-4-103 (b) provides "[a]cceptance by a creditor of a check, draft, or money order marked 'payment in full' or with language of equivalent condition, in an amount less than the total indebtedness, shall not constitute an accord and satisfaction unless: (1) [a] bona fide dispute or controversy exists as to the amount due; or (2) [s]uch payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt."

In the instant case, the evidence is uncontroverted that, at the time the instant check was issued, no bona fide dispute or controversy

had yet arisen concerning who was to pay the balance of the debt secured by the trade-in vehicle. The parties had simply agreed on the "bottom line figure" to be paid by appellants to appellee. Also there is absolutely no evidence that the check was made pursuant to an "independent agreement" that such payment would satisfy a "former" debt. See OCGA § 13-4-101. We find no error in the refusal of the trial court to give appellants' requested charges on accord and satisfaction.

6. At the conclusion of the charge, the trial court instructed the jury to go to the jury room and determine whether to begin deliberations that afternoon or to wait until the next morning. According to the transcript, the jury returned "shortly," and the foreman informed the court that the jury would like to return in the morning. The foreman then stated, "[W]e've reached a decision, but we would like to deliberate further tomorrow on the exact . . ." At that point, appellants moved for a mistrial on the ground that the jury had apparently reached a verdict without the benefit of the exhibits or pleadings. Appellants' motion was denied, and the court refused to give the jury additional instructions.

The following morning, the jury deliberated for an hour and twenty minutes with the benefit of the exhibits before returning a verdict for appellee. Appellants contend that the trial court erred in denying their motion for a mistrial.

Granting or refusing to grant a mistrial lies within the discretion of the trial court, and the appellate courts will not interfere absent a showing of an abuse of that discretion. *Patterson v. State*, 239 Ga. 409, 411 (2) (238 SE2d 2) (1977). It appears that the exhibits in the instant case were, for the most part, merely cumulative or corroborative of the oral testimony. Moreover, the jury had been fully instructed to consider all of the evidence, including "the documentary evidence, that is the exhibits that were admitted during the trial," and did, in fact, deliberate for one hour and twenty minutes while in possession of the exhibits and pleadings. In light of these facts, we find no abuse of the trial court's discretion in refusing to grant a mistrial or to give further instructions. Cf. *Elam v. Atlantic Coast Line R. Co.*, 115 Ga. App. 656 (1) (155 SE2d 644) (1967); *Orkin Exterminating Co. v. Dauer*, 146 Ga. App. 61, 63 (3) (245 SE2d 320) (1978).

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED MARCH 5, 1984.

*O. Torbitt Ivey, Jr.,* for appellants.
*Isaac S. Jolles,* for appellee.