A89A1725. CITY OF ATLANTA v. J. A. JONES
CONSTRUCTION COMPANY.
(392 SE2d 564)

BIRDSONG, Judge.

The City of Atlanta (the City) appeals from a judgment, based upon a jury verdict awarding damages to the J. A. Jones Construction Company (Jones). Jones alleged the City improperly awarded the contract to build new parking decks at the Atlanta Airport to a company which submitted a late bid (Count I), and that the City deprived Jones of the contract without due process of law (Count II).

The record shows the contract requirements specified the bids must be submitted no later than 2:00 p.m., April 10, 1985. Jones and several other bidders submitted their bids by 2:00 p.m., but at 2:03 p.m., after it had been announced that no other bids would be accepted, Interstate Construction Company (Interstate) submitted its bid. Although the City apparently intended to reject Interstate's untimely bid, it was opened with the timely bids. Another bid, submit-

ted between 2:05 and 2:10 p.m. was rejected because it was submitted after 2:00 p.m.

When the bids were opened, Interstate's bid was about $10,500 under the next lowest bid submitted by Jones, and all bids were over $13,000,000. After Jones protested the City opening the Interstate bid, it received oral assurance from the city official supervising the bid opening that Interstate's bid would be rejected.

Notwithstanding the untimely bid, Interstate started efforts to secure the contract. At 5:00 p.m. that day, at Interstate's request, the City checked the bid clock and apparently it was three minutes faster than clocks at the U. S. Bureau of Standards and a local time service. The record, however, shows the clock was never found fast in the years before or after 5:00 p.m., April 10, 1985, and no one could say that the clock was three minutes fast at 2:00 p.m. that day. Lawyers representing Interstate contacted the city's chief administrative officer and the mayor.

On April 10, 1985, Jones' attorneys sent a letter to the City protesting consideration of Interstate's bid, demanding the award of the contract to Jones, and advising of Jones' intention to sue if it was not awarded the contract. Similar letters were also sent to the City on April 23 and 25, 1985.

The uncontradicted evidence showed that time is critical right before bids are submitted, and bids are frequently adjusted at the last moment. Potential subcontractors frequently make last minute price changes, and corresponding changes are made in the bids. Consequently, bidders usually synchronize their watches with the City bid clock and maintain contact with their offices from near the bid office so they can receive the latest changes in their bid, but avoid filing a late bid. Indeed, Jones lowered its bid by over $4,000,000 in the last hours and by an additional $200,000 in the minutes before the bid was submitted. Thus, even without knowing the amounts of the other bids, a late bidder gained an important advantage by gaining additional time to revise its bid.

Jones' witnesses testified, without contradiction, that the company is very experienced in constructing large projects. More significantly, the uncontradicted testimony showed that Jones achieved its anticipated profits on those projects and on 80-90 percent of all its projects. Further, the unrebutted testimony was that cost overruns were the primary reason for not achieving the anticipated profit, that cost overruns were unlikely to occur on projects done regularly, and that the parking decks were a type project done regularly by Jones.

The evidence showed the invitation for bids called for bids on the basic project and two related projects. Jones' witnesses testified the anticipated profits from these two projects were $250,000 and over $264,000. Evidence shows that the bidder awarded the base project

was awarded both additional projects.

The unrebutted evidence was that Jones' bid preparation costs were $22,125.05, that because it lost this contract it lost its expected profits on all three projects, and because it lost the projects, it laid off employees it would not have otherwise. Although the trial court ruled the expected profits on the additional projects were too speculative to permit the award of damages for their loss, the court charged the jury that it could measure the damages awarded on Count II by the loss to Jones as proved by all the evidence introduced.

The evidence showed that the three letters Jones sent to the City's procurement officials were referred to the City's law department and were never answered. Jones introduced at trial the City's Procurement Code and Real Estate Code (Atlanta Ordinance No. 1983-52, 7/21/83) ("the Code"). Article H of the Code, Appeals and Remedies contains the protest procedures. Jones was authorized to file a protest by letter and the City was required to respond within ten days, with its decision, the reasons therefor, and also informing Jones of its rights to administrative review. Section 5-5111. No such response was ever made.

Instead, the City engaged in extensive internal debate apparently caused by the successful bidder's ability to invoke the participation of the City's chief administrative officer and the mayor. Consequently, even though the City's director of the bureau of purchasing and real estate, the assistant director for contracts, and the commissioner of the department of administrative services all deemed that Interstate's bid was untimely and should be rejected and that Jones should be awarded the contract as the lowest responsible and responsive bidder (see Section 5-5044 (9)), the decision on acceptance of Interstate's bid was elevated to the mayor.

The mayor testified that he viewed the matter as a battle between city departments without consequence to the bidders, and he did not feel legal advice was needed. In the mayor's opinion, being three minutes late in submitting a bid was not significant. He felt it important to show that the spirit of the law was as important as the letter, and they should not be inflexible if a lower price could be achieved.

Moreover, the mayor's testimony admitted he decided the matter with serious misunderstandings about the facts: He believed that Interstate's bid was $150,000 lower than Jones' bid, not $10,500; that the "fast clock" was detected contemporaneously with the late bid, not three hours later; and that this was only a small project, not one for over $13,000,000. Additionally, the mayor did not know the other late bid was rejected. Further, the mayor testified he "possibly" took into consideration that Jones was a very large contractor with plenty of work and that this "little parking deck . . . probably was not much

for them." In spite of the above related facts, the mayor decided to accept Interstate's bid. Jones, however, only learned of this indirectly when it heard Interstate had started work on the project.

Subsequently, suit was filed, the jury verdict was for Jones on both counts, and the trial court entered judgment in favor of Jones for $1,018,506.19 plus post-judgment interest. Thereafter, the City filed this appeal. *Held*:

1. The City's first enumeration of error alleges the trial court permitted the award double recovery for a single injury. While double recovery is not permitted for one injury, that principle has no application here because there were two injuries (*Davis v. Davidson*, 175 Ga. App. 451, 452 (333 SE2d 648)); Count I under state law for not awarding Jones the contract as required (see *Hilton Constr. Co. v. Rockdale County Bd. &c.*, 245 Ga. 533, 538 (266 SE2d 157)), and Count II under 42 USC § 1983 for the denial of due process (see *Board of Regents v. Roth*, 408 U. S. 564, 577 (92 SC 2701, 33 LE2d 548)).

The City also seeks to argue under this enumeration that federal law precludes the damages given under the § 1983 count. As this contention is not included within the enumeration of error and it is not enumerated elsewhere, we may not consider it, OCGA § 5-6-40; *Rider v. State*, 226 Ga. 14 (2) (172 SE2d 318). Further, the scope of appellate review may not be enlarged through a process of switching, shifting and mending one's hold. *Wilson v. State*, 145 Ga. App. 315 (5) (244 SE2d 355).

2. The City's second enumeration of error asserts that the trial court's charge on "the nature of a material deviation" was erroneous. No argument, no reference to the record, or citation of authority was made in the City's brief to support this enumeration, and it is deemed abandoned. Court of Appeals Rule 15 (c) (2); *Sepulvado v. Daniels Lincoln Mercury*, 170 Ga. App. 109 (316 SE2d 554). See also *Cooper v. Commercial Union Ins. Co.*, 192 Ga. App. 815, 816 (386 SE2d 551).

3. The City's third enumeration contends that the trial court erred by allowing the award of damages for Jones' lost profits. Although lost profits are not recoverable when they are too speculative to permit calculation (*Davis v. Boyd*, 118 Ga. App. 198 (162 SE2d 880)), this rule does not bar recovery of lost profits when they can be calculated with reasonable certainty. *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 738 (320 SE2d 863); Cobb & Eldridge, Ga. Law of Damages (3d ed.), §§ 2-8; 2A-8.

From the evidence about the nature of this project and Jones' prior experience (especially as viewed and resolved in favor of the verdict, *Union Camp Corp. v. Daley*, 188 Ga. App. 756 (1) (374 SE2d 329)), Jones proved a loss of anticipated profits which could be calculated with reasonable certainty. *Moultrie Farm Center v. Sparkman*,

supra. Further, the City's argument that a disappointed bidder for a public contract is never entitled to recover lost profits is contrary to our Supreme Court's decision in *Hilton Constr. Co. v. Rockdale County*, supra. Consequently, the award of damages based on the expected lost profits was authorized.

4. The fourth enumeration contends the trial court erred by directing a verdict for Jones on the City's liability for Count II, the 42 USC § 1983 claim. The City's contention relies on the United States Supreme Court's holding in *Parratt v. Taylor*, 451 U. S. 527 (101 SC 1908, 68 LE2d 420), that an adequate post deprivation remedy can be sufficient due process to defeat a § 1983 claim.

The City contends the failure to adhere strictly to the Code's procedures was not a due process violation, and a post deprivation remedy was sufficient because granting due process would have delayed construction, possibly added to the project's cost, and delayed alleviation of the airport's parking problems. These arguments are not based on the record. The record shows that the contract was not awarded promptly. Although the bidding closed on April 10, 1985, the contract was not awarded until days or weeks after April 29, 1985.

The City's argument that a 42 USC § 1983 action cannot be based on a single act was rejected by our Supreme Court in *City of Cave Spring v. Mason*, 252 Ga. 3-4 (310 SE2d 892). The number of due process violations is not significant if the act was official City policy. The intentional decision by the mayor certainly qualifies.

Additionally, the City's argument ignores that "[t]he fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.' " (*Parratt v. Taylor*, supra at 540), and that post deprivation remedies found to be adequate were required by a need for quick action or the impracticality of providing "meaningful predeprivation process" coupled with the "availability of some meaningful means" of assessing the action after the fact. Id. The facts of this case belie any argument either that prompt award was required or that a hearing was impractical. Thus, a post deprivation hearing was not sufficient. *Logan v. Zimmerman Brush Co.*, 455 U. S. 422, 436 (102 SC 1148, 71 LE2d 265). The City's argument also ignores the requirement that a constitutional post deprivation procedure must provide an *adequate* remedy to redress the wrong. See generally *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 211 (1) (367 SE2d 43), citing *Parratt*, supra, and *Hudson v. Palmer*, 468 U. S. 517, 533 (104 SC 3194, 82 LE2d 393). The City offers as a post deprivation remedy Jones' right to sue for damages. As this case shows, however, that right does not entirely compensate for the loss and may only come many years after the fact. Accordingly, that rem-

edy is not adequate.

Finally, the City's argument that Jones had no protected property right under the law of this state, completely misreads our Supreme Court's decision in *Hilton Constr. Co.*, supra. See also *Strickland v. Ports Petroleum Co.*, 256 Ga. 669, 670 (353 SE2d 17), the right to contract is a protected property right. Contrary to the City's assertions, *Hilton Constr. Co.* was remanded to the trial court for determination whether damages were appropriate. 245 Ga. at 540. See also *Mark Smith Constr. Co. v. Fulton County*, 248 Ga. 694, 695 (285 SE2d 692). Further, the Supreme Court's decision in *Hilton Constr. Co.* specifically held that *Peeples v. Byrd*, 98 Ga. 688 (25 SE 677), on which the City bases this argument, would no longer be followed "when as in this case the law required the award of the contract." 245 Ga. at 538. Since only Jones was the lowest responsive and responsible bidder (see Division 5, infra), the City's argument ignores the plain mandate of the Code.

"A directed verdict . . . is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict." (Emphasis deleted.) *Union Camp Corp. v. Daley*, supra at 756; OCGA § 9-11-50 (a).

Here the evidence established that the City deprived Jones of the contract without due process, including the procedure required by the Code. This is sufficient to establish a violation of 42 USC § 1983. In this regard, we must note that the City did not try to prove that it afforded Jones any due process of law. Accordingly, the trial court did not err by granting a directed verdict to Jones on this claim.

5. The fifth enumeration of error contends the trial court erred by refusing to find as a matter of law the City could accept a late bid as long as other bids were not opened. This contention asked the trial court to grant a right the City did not give itself in the Code.

The Code specified that "[t]he contract *shall* be awarded with reasonable promptness by written notice to the lowest responsible and *responsive* bidder *whose bid meets the requirements and criteria set forth in the invitation for bid.*" (Emphasis supplied.) Procurement Code § 5-5044 (9). The Procurement Code defines "shall" as "denoting the imperative" (§ 5-5002 (17)) and a "responsive bidder" as "any person who has submitted a *bid . . . which conforms in all material respects to the invitation for bids. . . .*" (Emphasis supplied.) Procurement Code § 5-5002 (19). The contract specifications and the invitation for bids for this contract required bids to be submitted before 2:00 p.m., April 10, 1985. Interstate did not submit its bid by this time. (Since this argument concedes that Interstate's bid was late, we need not consider the "fast clock claim.") Therefore, since Interstate did not submit a bid which conformed "in all mate-

78

rial respects to the invitation for bids" it was not a responsive bidder, and the City was required to award the contract to Jones (*Hilton Constr. Co.*, supra). Moreover, whether the lateness of Interstate's bid was a mere informality which could be waived, or a material defect which could not be waived was submitted to the jury by special interrogatory and the jury decided that the defect was material. Accordingly, the City did not have the discretion to accept the late bid, and the trial court did not err. See also *Glynn County v. Teal*, 256 Ga. 174 (345 SE2d 347).

Further, the City cited no authority in the Code granting it the discretion to accept a late bid with a material defect. Moreover, the City's arguments based on authority from foreign jurisdictions are contradicted by controlling precedent from our Supreme Court. Both *Hilton Constr. Co.*, supra, and *Georgia Branch, Assoc. &c. v. City of Atlanta*, 253 Ga. 397 (321 SE2d 325) clearly hold that when the Code and City Charter require an act, the City lacks the discretion to disregard the requirements.

6. The City's final enumeration contends the trial court erred by holding that Jones substantially complied with OCGA § 36-33-5. Although it is doubtful that such notice was required on the state law count (see *Schaefer v. Mayor &c. of Athens*, 120 Ga. App. 301 (170 SE2d 339)), the trial court correctly ruled that the three letters Jones sent the City complied substantially with OCGA § 36-33-5. *City of Atlanta v. Frank*, 120 Ga. App. 273 (170 SE2d 265); *City of Atlanta v. Fuller*, 118 Ga. App. 563 (164 SE2d 364). These letters satisfied the purposes of this section (*City of Gainesville v. Moss*, 108 Ga. App. 713 (134 SE2d 547)) and the complaint adequately averred compliance of § 36-33-5. Moreover, this requirement does not apply to the 42 USC § 1983 count. *Majette v. O'Connor*, 811 F2d 1416, 1418 (11th Cir. 1987).

*Judgment affirmed. Deen, P. J., and Cooper, J., concur.*

DECIDED MARCH 13, 1990 —
REHEARING DENIED MARCH 26, 1990 —

*Marva Jones Brooks, Joe M. Harris, Jr., Michael L. Smith, Bruce P. Johnson*, for appellant.
*Sumner & Hewes, William E. Sumner, Stephen J. Anderson, David A. Webster, Garrett & McManus, Bowman S. Garrett, Jr., Sheryl N. Currie*, for appellee.