S90G0957. CITY OF ATLANTA v. J. A. JONES
CONSTRUCTION COMPANY et al.
(398 SE2d 369)

BENHAM, Justice.

We granted certiorari to consider the measure of damages to which a "frustrated bidder" is entitled when a governmental agency has wrongfully denied its bid. To consider that issue, only a brief recitation of the facts is necessary. For a more complete statement of the facts, see *City of Atlanta v. J. A. Jones Constr. Co.*, 195 Ga. App. 72 (392 SE2d 564) (1990).

Appellant advertised for bids for construction of a parking deck at Hartsfield International Airport. The deadline for submitting bids was set at 2:00 p.m., April 10, 1985. Appellees' bid was the lowest timely bid submitted, but the contract was awarded to Interstate Construction, whose bid was lower but was submitted three minutes after the 2:00 p.m. deadline. Appellees sued the City in two counts, seeking their lost profits in a claim for damages under state law, and seeking further damages under 42 USC § 1983 for an alleged denial of due process of law in the City's failure to conduct a hearing to consider appellees' complaints regarding the consideration of the late bid. The jury awarded appellees $522,125.05 on their state law claim and $375,000 on the § 1983 claim. The Court of Appeals affirmed the trial court's judgment.

1. In order to determine whether the damages awarded were correct, we must first look at the purpose of the bid requirement. It appears that, all things being equal, the bid process for public projects was designed to protect the public coffers from waste and to assure that taxpayers receive quality work and goods for the lowest possible price. Approval of a process which favors the acceptance of the lowest bid is a constant theme expressed in cases decided by this court, cul-

minating in *Ga. Branch, etc. v. City of Atlanta*, 253 Ga. 397 (321 SE2d 325) (1984). When, as here, a governmental entity has frustrated the bid process and awarded the contract to an unqualified bidder, the injured low bidder may bring an action for appropriate relief. *Hilton Constr. Co. v. Rockdale County Bd. &c.*, 245 Ga. 533 (266 SE2d 157) (1980). However, a low bidder whose bid is unfairly rejected is only entitled to an award of reasonable costs of bid preparation. McQuillian, Municipal Corporations, p. 549, Sec. 29.86. We do not reach the issue of whether a public official could be held personally liable in the event of fraud, collusion, or corruption since that was not an issue in this case. In holding that appellees are entitled only to reasonable costs of bid preparation, which was established at trial to be $22,125.05, we adopt the reasoning of *S & W Mechanical Co. v. City of Homerville*, 682 FSupp. 546 (M.D. Ga. 1988), and specifically disallow the recovery of lost profits. To permit the recovery of lost profits would unduly punish the tax-paying public while compensating the plaintiffs for effort they did not make and risks they did not take. Limiting recovery to reasonable bid preparation costs is in keeping with the legitimate governmental objective of rewarding the lowest qualified bidder and guarding against public officials shirking their duties while, at the same time, preventing unwarranted waste of taxpayers' money.

Since the award of damages on the state law claim in this case was greatly in excess of the allowable damages, the damages award in the judgment must be reversed.

2. Appellant complains that the award based on the § 1983 claim constituted an impermissible double recovery. We agree.

"[T]he abstract value of a constitutional right may not form the basis of § 1983 damages. . . . [S]uch damages must always be designed 'to *compensate injuries* caused by the constitutional deprivation.' [Cits.]" [*Memphis Community School Dist. v. Stachura*, 477 U. S. 299, 308-9 (106 SC 2537, 91 LE2d 249) (1986).]

The basis for appellees' § 1983 claim was that appellant failed to afford them a hearing at which they could contest the award of the contract to another bidder. The damage from that failure was that appellees were not themselves awarded the contract. As we have held above, the permissible recovery for that wrong is the reasonable expense of bid preparation. Accordingly, we hold that the award for damages on the § 1983 claim must also be reversed. There being no contest regarding the amount of appellees' bid preparation expenses, the trial court is directed upon remand to enter judgment for appellees in the amount of $22,125.05 with interest.

*Judgment reversed and remanded with direction. All the Justices concur, except Smith, P. J., and Fletcher, J., who dissent.*

WELTNER, Justice, concurring.

I agree with the opinion. As we have noted, no equitable claim is included in the relief sought by Jones. Nor is there any claim that seeks money damages against an individual. Because we have eliminated by our holdings some of the relief awarded in the trial court, I write to suggest the possibilities of additional relief (which is *not* here in issue), as might avail for a proper case in the future.

1. Recently we reiterated the long-standing distinction, in cases of official immunity, between ministerial and discretionary functions as to *negligent* acts of public officials.

> Under this court's decisions in *Martin [v. Ga. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987), cert. denied 484 U. S. 998 (1988)] and *Price [v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987)] . . . where there is a formal self-insurance plan or a policy covering official acts of a public official, sovereign immunity is waived. However, where there is no self-insurance fund, the distinction between ministerial and discretionary acts is still viable in ruling on immunity for public officials for liability for their negligent acts. [*Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990).]

More important to the present discussion, however, is this observation:

> It is important to keep in mind that the immunity is for negligent acts, not for malicious acts, acts of corruption, wilful acts, or acts involving reckless disregard for the safety of others. [Id. at 206-7.]

2. Just as we have held that fraud and corruption may be grounds for invalidating legislative acts,[1] and that ultra vires acts of public officers are not binding upon a public agency,[2] so it would

---

[1] E.g., *Cross v. Hall County*, 238 Ga. 709, 711 (235 SE2d 379) (1977):
When neighbors of rezoned property challenge the rezoning in court on its merits, it will be set aside only if fraud or corruption is shown or the rezoning power is being manifestly abused to the oppression of the neighbors. [Id. at 711.]

[2] E.g., *Earth Management, Inc. v. Heard County*, 248 Ga. 442, 448 (283 SE2d 455) (1981):
We can only conclude that Heard County instituted the condemnation proceeding for the obvious purpose of preventing the land from being used as a hazardous waste facility. Such action is beyond the power conferred upon the county by law and amounts to bad faith. [Id. at 448.]

seem, in a proper case, that fraud and corruption on the part of a public official resulting in the unlawful award of a publicly-bid contract may subject the fraudulent and corrupt official to personal liability to the same degree as the public agency.

3. That result follows upon a consideration of these two basic precepts of the law:

(a) "Public officers are the trustees and servants of the people and are at all times amenable to them." Art. I, Sec. II, Par. I, Constitution of Georgia of 1983.

(b) "For every right there shall be a remedy. . . ." OCGA § 9-2-3.[3]

I am authorized to state that Chief Justice Clarke, Justice Bell and Justice Hunt join in this concurrence.

SMITH, Presiding Justice, dissenting.

This situation would be ludicrous if it was not so serious. Quoting from the appellants' brief, appellee "overlooks the very nature of this case which, at bottom, is another 'disappointed bidder' or 'frustrated bidder' claim."

The undisputed facts are:

(a) Appellees filed their bid properly and before the filing deadline.

(b) Interstate Construction Company filed its bid after the filing deadline.[4]

(c) Palote Construction Company filed it's bid after the filing deadline, but before any bids were opened; it was rejected without being opened.

(d) The City bid officer declared the 2 o'clock deadline had arrived and stated he would not accept anymore bids.

(e) Despite this, the same officer stamped the bid of Interstate Construction Company, showing it was received after the 2 o'clock deadline.

(f) The same officer stated that the Interstate bid was late and would not be opened.

(g) Despite the announcement set out in (f) above, Interstate's untimely bid was opened and read along with the bids submitted on

---

[3] For a legislative provision imposing personal liability upon public officials for certain contract bidding irregularities, see OCGA § 50-5-79. See also *Cobb County v. Wilson*, 259 Ga. 685 (386 SE2d 128) (1989), concerning equitable relief:

> [I]f the zoning authority refuses to comply with [the trial court's] order to rezone, then the court has the power to punish the members of the zoning authority, in their individual capacities, for criminal contempt. Thus each member as an individual can be fined and/or jailed for contempt. [Id. at 686.]

[4] According to newspaper reports, a principal owner of Interstate Construction Company is Mr. Herman Russell, a heavy contributor to Andrew Young's campaigns for Mayor of Atlanta and Governor of Georgia.

time.

(h) The bid officer, his supervisor (the head of the Bureau of Purchasing), and his supervisor's supervisor (the Commissioner of Administrative Services), all took the position that Interstate's bid should be rejected as untimely.

(i) At that time, Mayor Young overruled all of them and ordered the contract be awarded to Interstate although it was filed after the deadline had passed for filing bids.[5]

Appellee is not a "disappointed" or "frustrated" bidder, it is a deprived bidder — deprived by direction of the former Mayor of the City of Atlanta. The majority opinion states at p. 659 that: "We do not reach the issue of whether a public official could be held personally liable in the event of fraud, collusion, or corruption since that was not an issue in this case." That issue should have been addressed.[6]

I ask you, what do you call it when the Mayor, over the objection of the legally constituted body for passing on city bids, directs that a contract be awarded to one whose bid was not filed on time? There is no effort by the majority opinion to exonerate or justify this illegal act.

The only thing the majority does is to try and explain that the bid requirement is for the purpose of protecting the taxpayers.[7] The time deadline is to protect the taxpayers also. Up until now it meant if you do not get your bid in on time, you do not get the bid — period, end of paragraph.

So now that we have allowed a contract beyond the deadline, what deadline do we set past the deadline when one may file his bid? There is a timeworn, but never the less true, expression that illustrates the case at hand. You cannot be a little pregnant. Either you are or you are not. Either you file on time or you do not. A knowing

---

[5] As I sit here in the den of my home preparing this dissent, I see in the newspaper that the Chairman of the Fulton County Commission has "one-upped" the former Mayor of the City of Atlanta. He has awarded a county contract to the *highest* bidder, who, coincidentally contributed $10,000 to the chairman's political campaign. To his credit, however, the bid was apparently filed on time.

[6] Black's Law Dictionary (5th ed.), defines *corruption* thusly:
An act done with an intent to give some advantage *inconsistent* with *official duty* and the *rights of others*. The act of an *official* or fiduciary person who unlawfully and *wrongfully* uses his station or character to procure same *benefit* for himself or *for another person* contrary to *duty* and the *rights of others*.
(Emphases supplied.) That is this case, by the definition of corruption.

[7] The Mayor, by awarding the bid to the late, low bidder, still cost the taxpayers money. Although the wrongful bid award was $10,542 less than the low legal bid, the majority awards to the appellee $22,125.05 for the cost of preparing its plans. Thus, even when deducting the lesser amount of the late, low bid from the $22,125.05 awarded to the appellee, the taxpayers must still pay an additional $11,583.05 plus the expense of defending this action. I do not imply that the appellee should not receive the costs of preparing its plans; I only seek to show that the taxpayers are not served well by the majority's result.

violation of the time limit by one not authorized to award bids cannot be excused by pointing a finger and saying, naughty, naughty, do not do that. Nevertheless, the majority says it must protect the taxpayers by striking this large verdict.

There are two remedies applicable to this situation: equitable relief in the form of an injunction, or money damages. As to the first, the appellees' attorney made the statement in his argument that they were requested not to pursue an injunction because it would delay the construction of the parking decks at the airport.[8] Obviously such a delay would cost the taxpayers money. The appellants should not be allowed to take advantage of that courtesy in this law suit. They should be estopped from doing so.

Thus, the only way for the appellees to stop public officials from violating the law is to let courts and juries pass upon their wrongdoing such as we have here and, if the damages awarded are high, the voters have a way to handle that — the ballot box.

In closing, I think it well to point out that appellant's brief relied upon *Memphis Community School District v. Stachura*, 477 U. S. 299 (106 SC 2537, 91 LE2d 249) (1986) for the proposition that the appellee could only recover nominal damages, *"unless it could show that it had been wrongfully denied the contract on which it bid."* (Emphasis supplied.) This statement is made despite the fact that the trial court, the jury, the Court of Appeals, and the majority opinion found that appellee had been wrongfully (unfairly is the way the majority opinion put it) denied the contract.

Let us see what The American Heritage Dictionary of the English Language has to say about the word "wrongfully" as quoted in appellant's brief and the word "unfairly" as used in the majority opinion.

*Wrongfully*: Wrong; Injurious; Unjust. Contrary to law; Unlawful; Illegal.

*Unfairly*: Not just or evenhanded; Biased; Contrary to laws or convention, especially in commerce; Unethical.

*Unjust*: (Not just) violating principles of justice or fairness; (unfairly). Wrongful; (as in *Memphis Community School District*, cited by appellant as authority for the proposition that the appellee could recover only nominal damages unless it had been *wrongfully* denied the contract).

Now the two interlocking words in the definitions of *unfairly* and *wrongfully*, the two words used by appellant and the majority opinion, are *not just* in unfairly, and *unjust* in *wrongfully*. Also the last

---

[8] This statement was made during oral argument and was not challenged by appellant on rebuttal argument. However, in a supplemental brief after argument, appellant states that the record had been searched and nothing was found. This is entirely reasonable as there was no reason to raise it at trial.

word in the definition of *unjust* is *unfair*. Therefore, you can take these two words used by the majority opinion and the appellant and without a shadow of a doubt uphold the verdict and judgment in this case.

FLETCHER, Justice, dissenting.

"Statutes requiring the letting of contracts to the lowest bidder are designed for the benefit and protection of the public, and not that of the bidders." *Peeples v. Byrd*, 98 Ga. 688, 692 (3) (25 SE 677) (1896). Consequently, in resolving the issues presented in a case such as this, the lodestar is the interest of the public and not that of an aggrieved, unsuccessful bidder.

The letting of public works contracts through a competitive bidding process has essentially two objectives: First, it is intended to ensure that public works projects will be constructed by a qualified or responsible bidder at the lowest possible price, see *Ga. Branch &c. Contractors v. City of Atlanta*, 253 Ga. 397, 399 (2) (321 SE2d 325) (1984); and, second, it is intended to ensure that government agencies and contractors do not engage in fraud, collusion, or corruption in the letting of public contracts. See *Garrison v. Perkins*, 137 Ga. 744, 756-757 (74 SE 541) (1912).

Consequently, Georgia cases have held that after a government agency has solicited competitive bids for a public works project, it cannot make material changes in the plans and specifications without renewed notice to prospective bidders. *Glynn County v. Teal*, 256 Ga. 174 (345 SE2d 347) (1986); *Manly Building Co. v. Newton*, 114 Ga. 245 (3) (40 SE 274) (1901). Georgia cases have also held that the government agency is vested with discretion in determining whether the lowest bidder is qualified or responsible. *Peeples v. Byrd*, 98 Ga. at 693 (3), supra. It has also been held that the government agency is not authorized to reject the lowest bid without making this determination. *Hilton Constr. Co. v. Rockdale County Bd. &c.*, 245 Ga. 533, 537 (1) (266 SE2d 157) (1980). These holdings serve to ensure that when public works contracts are let, the public interest, in both the competitive bidding process and the awarding of an individual contract, will be served.

Just as is found in most local government invitations to bid, here the city reserved the right to (1) waive informalities in bids, (2) accept any bid submitted, and (3) reject any or all bids. Although Georgia courts have not addressed questions in regard to whether a government agency is authorized to waive an irregularity in the bidding process, courts in other states have addressed such questions.

Consistent with the public interest being the overriding concern in cases such as this, courts in other states have held that where the lowest qualified bidder has failed to submit its bid in strict compli-

ance with the time limits within which such bids are required to be submitted, the government agency, acting honestly and in good faith, may, in exercise of its discretion, waive this irregularity, at least where the untimely bidder has not been given a substantial advantage or benefit not enjoyed by other bidders. See *Gostovich v. City of West Richland*, 452 P2d 737, 740 (3) (Wash. 1969); *Townsend v. McCall*, 80 S2d 262 (10) (Ala. 1955); *Hewitt Contracting Co. v. Melbourne Regional Airport Auth.*, 528 S2d 122 (Fla. App. 1988); *William Young &c. Co. v. West Orange Redevelopment Agency*, 311 A2d 390 (3) (N.J. App. 1973).

Where, as here, the breach of the time requirement was clearly de minimis, and there is no evidence that the lowest qualified (albeit untimely) bidder was thereby given a benefit or advantage, the law in this area thus allows the government agency to exercise its discretion and award the contract to the lowest bidder. This holding serves the public interest. A contrary holding does not.

While I do not agree with the majority's holding that the appellee's bid was unfairly rejected, I am of the opinion that the measure of damages in an action against a governmental body in any case involving the issue of improper rejection of a bid should be limited to the reasonable costs of bid preparation. To hold otherwise would punish the public, not the offender. If public officials are guilty of fraud, collusion, or corruption in the bidding process, let them be prosecuted and punished through our criminal justice system.

I respectfully dissent.

DECIDED DECEMBER 5, 1990 —
RECONSIDERATION DENIED DECEMBER 19, 1990.

*Marva Jones Brooks, Bruce P. Johnson, Michael L. Smith, Joe W. Harris*, for appellant.

*Sumner & Hewes, William E. Sumner, Nancy Becker Hewes, Stephen J. Anderson, David A. Webster, Garrett, McManus & Grubb, Bowman S. Garrett, Jr.*, for appellees.

*Bruce L. Bromberg*, amicus curiae.