S07A0265. DUTY FREE AIR & SHIP SUPPLY CO./FRANKLIN WILSON AIRPORT CONCESSION, INC. v. CITY OF ATLANTA et al.

(646 SE2d 48)

MELTON, Justice.

In April 2002, using a procedure for solicitation of competitive sealed proposals, the City of Atlanta issued a Request for Proposals (RFP) to construct and operate an expanded area of duty free shops in the international concourse at Hartsfield-Jackson International Airport. In response, Duty Free Air & Ship Supply Co. (DFASS) and Atlanta Duty Free, LLC (ADF) submitted proposals. The City's Chief Procurement Officer selected DFASS, determining at the time that it was the most responsible and responsive proponent. ADF then appealed the selection to an administrative hearing officer who affirmed the selection of DFASS. Thereafter, the superior court reviewed the case on certiorari, reversed the decision of the administrative hearing officer, but determined that it could not grant any award of a contract. DFASS then appealed the superior court's ruling to the Court of Appeals, which reversed the ruling because ADF failed to file a valid bond with its petition for certiorari. *Duty Free Air & Ship Supply v. Atlanta Duty Free*, 275 Ga. App. 381 (620 SE2d 616) (2005).

While the case was pending before the Court of Appeals, the City's Chief Procurement Officer informed DFASS that the City was going to cancel the RFP and conduct a solicitation for proposals in a new, revised RFP. Nonetheless, when the Court of Appeals issued its opinion, DFASS demanded that the City grant it the RFP contract. Instead, the City issued the new RFP, and DFASS filed a petition for writ of mandamus, seeking to compel the City to immediately execute a contract, which it argued had become vested and binding. To the extent that any remaining steps were required prior to execution, DFASS contended that all of these steps were ministerial functions and suitable for a grant of mandamus. The trial court denied the writ of mandamus, and this appeal followed.

The narrow query now before this Court is simply whether mandamus is an appropriate remedy in this case. Based on the Legislature's explicitly stated intention in the Georgia Local Government Public Works Construction Law, OCGA § 36-91-1 et seq. ("Construction Law") that local laws and ordinances control the manner of the City's execution of and entry into contracts, we find that DFASS was not entitled to a writ of mandamus requiring the City to execute a contract in its favor as neither the Mayor of Atlanta nor the City Council of Atlanta had exercised their discretionary authority to approve any award which may or may not have resulted from the competitive sealed proposals process in this case.

It is axiomatic that "[m]andamus is a remedy designed to compel the doing of ministerial acts. Mandamus is not an appropriate remedy to compel the undoing of acts already done or to compel the exercise of official discretion." *Speedway Grading Corp. v. Barrow County Bd. of Commrs.*, 258 Ga. 693, 695 (1) (373 SE2d 205) (1988).

The Construction Law explicitly contemplates the joint application of its terms with local law and ordinances. It states unequivocally: "Municipalities and consolidated governments shall execute and *enter into contracts in the manner provided in applicable local legislation or by ordinance.*" (Emphasis supplied.) OCGA § 36-91-20 (a). Accordingly, an award which might be made to the most responsible and responsive offeror of an RFP pursuant to OCGA § 36-91-21 (c) (1) (C) would remain subject, under OCGA § 36-91-21 (a), to requirements of local law governing the City's execution and entry into any contract emanating from the initial award. The Legislature, therefore, clearly intended for the Construction Law to be supplemented by local law such as that contained in the Code of the City of Atlanta ("City Code") and the Charter of the City of Atlanta ("City Charter").

With regard to the execution and entry into contracts such as the one in question, the City Code mandates that contracts for construction or services in excess of $100,000 must first be considered and approved by the City Council, City Code Section 2-1140. The City Charter emphasizes the importance of this approval, admonishing that "[c]ontractual work related to any competitive sealed bid or proposal shall not be broken into components or parts so as to avoid the council's approval of awards of greater than $100,000.00." City Charter Section 6-402 (e). In addition, the City Code further indicates that any such contract must ultimately be approved and signed by the Mayor. City Code Section 2-176. It is undisputed that neither of these acts has occurred in this case.

The acts of the City Council and the Mayor in approving the alleged contract in question are discretionary. City Code Section 2-176

> specifies that the Mayor is to execute a contract within 30 days of the resolution authorizing a contract, or inform the President of the City Council, in writing, the reasons why the Mayor has not executed a contract. Clearly, on its face, the ordinance gives the Mayor a *choice* to sign or not to sign a prepared contract, and [s]he does not have the specific duty to execute a contract. Accordingly, the failure to execute a contract is not a violation of a ministerial duty, but rather an act of discretion.

*Common Cause/Ga. v. City of Atlanta,* 279 Ga. 480, 482 (2) (614 SE2d 761) (2005). Mandamus cannot compel such a discretionary act. *Speedway Grading,* supra. Therefore, DFASS's writ must fail.

In reaching its conclusion, the dissent exceeds the narrow question now before us regarding the propriety of the requested remedy. Instead, the dissent at p. 179 goes so far as to make its own determinations of fact that City officials are guilty of wrongdoing in this case to the level of creating a mockery because "the City . . . arbitrarily refuses to prepare, and the Mayor refuses to sign [the] contract." These accusations are both inappropriate and wholly unnecessary given the explicit legislative mandate of OCGA § 36-91-20 (a). Despite the Legislature's intent to respect the discretion afforded to governing bodies under local law, the dissent infuses the Construction Law with the exact opposite intent. In fact, under the dissent's analysis, the discretionary decisions of the Mayor and the City Council of the City of Atlanta to approve contracts for goods or services in excess of $100,000 are reduced to nothing more than mere ministerial "formalities," leaving the Chief Procurement Officer unchecked as the sole authority with the power to irrevocably bind the City to these contracts. The Legislature did not intend on such a result, be it for the City of Atlanta or any other local government. To the contrary, the Legislature intended for the Construction Law to complement local laws regarding the execution and entry into contracts, not to eviscerate them.

*Judgment affirmed. All the Justices concur, except Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

The majority inexplicably treats this case as if it involves an ordinary rejection of competitive bids or proposals. Instead, this case involves the exact opposite: the selection of the best competitive sealed proposal in accordance with governing law by the only official authorized to make that decision. The City published a Request for Proposals (RFP) in April 2002, and two companies submitted proposals four months later. Oral interviews were conducted after passage of another four months. In October 2003, over a year after the submission of proposals, the Chief Procurement Officer, in accordance with the authority granted to him, made and communicated in writing the City's official determination that DFASS was the most responsible and responsive offeror, and that it proposed the most advantageous terms. The majority admits that this selection occurred. At any time during the 14 months preceding the Chief Procurement Officer's determination, the City could have instigated further discussions, negotiations, and revisions, but it did not. After its evaluation process was complete, the City could have rejected both

proposals or cancelled the solicitation, but it did not. Instead, the City proceeded to make that written determination which made its award of the contract to the best offeror mandatory under the Construction Law. At that point, the award of the contract was complete pursuant to OCGA § 36-91-21 (c) (1) (C), and the City and its officials no longer had the discretion to refuse to accomplish remaining formalities. Indeed, the City defended its selection of DFASS for well over a year during the pendency of the appeals process, although this fact is ignored by the majority.

The only provision of the Construction Law, OCGA § 36-91-1 et seq., other than OCGA § 36-91-20 (a), that the majority even mentions is OCGA § 36-91-21 (c) (1) (C), which it summarily treats as subordinate to OCGA § 36-91-20 (a). Only by electing to turn a blind eye to all other provisions of that general statute can the majority achieve its holding that local laws and ordinances solely control the award of contracts entered into by the City, and evade discussion of whether its interpretation of the ordinances upon which it relies conflicts with any portion of the Construction Law. Having ignored the Construction Law, the majority then proceeds to misinterpret the City Code so as to give the Mayor absolute authority, long after the time for rejecting all bids or proposals has passed, to renege on the City's previous acceptance of a bid or proposal, regardless of any contrary statute or ordinance. Thus, from today forward, the Mayor can ignore any procurement laws and invalidate the award to the selected bidder or proponent for any reason, including a mere dislike for those persons involved with the winning company. Such a situation frustrates the purpose of the Construction Law by sanctioning arbitrary rejection and favoritism. Therefore, I respectfully dissent.

The majority opinion notwithstanding, the primary law applicable in this case is the Construction Law. Pursuant to that general statute, the City, as a result of its choice to solicit competitive sealed proposals, "shall . . . [m]ake an award to the responsible and responsive offeror whose proposal is determined in writing to be the most advantageous to the governmental entity, taking into consideration the evaluation factors set forth in the [RFP]." OCGA § 36-91-21 (c) (1) (C). See also City Charter § 6-402 (a); City Code § 2-1189 (g). Because the City has, in writing, selected DFASS as the responsible and responsive offeror whose proposal is most advantageous, the City "shall . . . [m]ake an award" to DFASS.

This mandatory, substantive language is not vitiated by the fact that, in OCGA § 36-91-20 (a), the Construction Law permits local legislation or ordinances to provide for the manner of execution and entry into public works construction contracts. The manner of execution and entry into a contract relates to formalities, not the substantive formation of the agreement itself. At the end of its opinion, the

majority makes the unsupported assumption that the Construction Law was merely intended to complement local laws. Unlike the majority opinion, however, nothing in OCGA § 36-91-20 (a) authorizes ordinances to conflict with or prevail over the Construction Law, or to control formation of the contract.

Relying on wholly inapplicable ordinances, the majority claims to respect the discretion given to the Mayor and City Council while completely ignoring the discretion which the Chief Procurement Officer has to accept or reject competitive sealed proposals. The majority incomprehensibly refuses to acknowledge that neither the Mayor nor the City Council has been designated as the City's purchasing and contracting authority with respect to competitive sealed proposals. Under the plain terms of the City Code, the Chief Procurement Officer is the appropriate official to solicit and enter into construction contracts, and to select the most responsible and responsive offeror. City Code §§ 2-1138 (a), 2-1189 (d). Under OCGA § 36-91-21 (c) (1) (C), the actual preparation of a formal document and the signing of it by the Mayor, after completion of competitive selection procedures, are not prerequisites to the formation of a binding contract. Contrary to the majority's analysis, it is neither unusual nor prohibited for a contract to become binding prior to the Mayor's signature and for that signature to be considered a mere formality. *City of Atlanta v. Foster & Cooper*, 236 Ga. 834, 838-839 (225 SE2d 278) (1976). See also *United States v. Purcell Envelope Co.*, 249 U. S. 313, 319-320 (39 SC 300, 63 LE 620) (1919); 10 McQuillin Mun. Corp. § 29.80 (3rd ed.); 1 Bruner & O'Connor Construction Law § 2:140.

Final approval by the City Council is required prior to an award of contract only if it was not competitively procured in accordance with the Charter and ordinances or if someone other than the most qualified bidder or offeror was selected. City Charter §§ 3-104 (14), 6-402 (f). Other charter provisions, such as § 6-402 (e), cited by the majority, which refer more generally to Council approval must be construed in conjunction with this requirement. See *Burkhardt v. Burkhardt*, 275 Ga. 142 (2) (561 SE2d 822) (2002); *Mayor &c. of Savannah v. Savannah Elec. & Power Co.*, 205 Ga. 429, 436-437 (54 SE2d 260) (1949). The majority erroneously cites City Code § 2-1140, which is subordinate to the Charter, does not govern which contracts must be approved by the Council, and deals only with the Chief Procurement Officer's authority to sign certain contracts which have received Council approval. Because competitive procedures have been followed and the best offeror selected, final approval by the City Council is not required prior to the award of contract. Moreover, even if such approval were required, the City Council, like the Mayor, is bound by the applicable statutory provisions and, under the proper interpretation of the Construction Law, the Council's approval after

selection of the best offeror would have to be considered a mere formality, the absence of which would not vitiate the previously formed contract.

In determining that the supposedly necessary acts of the Mayor and City Council in approving the contract are discretionary, and not formalities, the majority relies on City Code § 2-176 and *Common Cause/Ga. v. City of Atlanta*, 279 Ga. 480, 482-483 (2) (614 SE2d 761) (2005). In that case, however, acceptance of a bid was accomplished by a resolution which "specifically stated that the agreement would not be binding on the City until executed by the Mayor. . . ." *Common Cause/Ga. v. City of Atlanta*, supra at 480-481. Under that authority, the Mayor *was* the appropriate official to decide whether to make the award. City Code § 2-176 is simply the general ordinance providing how much time the Mayor has to determine whether to execute a contract for which final approval by the Council is necessary. *Common Cause/Ga.* correctly held that § 2-176 did not require the Mayor to sign the contract, and thereby make her duty ministerial. Conversely, however, there is absolutely nothing in § 2-176 which makes every signing of a contract by the Mayor discretionary.

*Common Cause/Ga.* is completely different from this case in every respect and is not, therefore, remotely applicable authority for the majority's holding. The bidding in *Common Cause/Ga.* took place in 1999, prior to the enactment of OCGA § 36-91-21. Moreover, that statute would not apply to contracts, like the one in *Common Cause/Ga.*, which deal solely with the management of existing facilities. OCGA § 36-91-2 (10). Therefore, completely unlike *Common Cause/Ga.*, this case is governed by OCGA § 36-91-21. That critical distinction is lost on the majority. By its unambiguous terms, OCGA § 36-91-21 (c) (1) (C) mandates award of the contract to the selected offeror. When the applicable law "require[s] an act, the City lacks the discretion to disregard the requirements." *City of Atlanta v. J.A. Jones Constr. Co.*, 195 Ga. App. 72, 78 (5) (392 SE2d 564) (1990), rev'd on other grounds, 260 Ga. 658 (398 SE2d 369) (1990). See also *United States v. Purcell Envelope Co.*, supra at 318-319.

The majority opinion effectively confuses the distinction between a mere competitive proposal and a legally enforceable contract. "Public contracts traditionally have been held to be formed by public acceptance of bids rather than by subsequent execution of contracts documenting the acceptance. [Cits.]" 1 Bruner & O'Connor, supra at § 2:140. See also *City of Merrill v. Wenzel Bros.*, 277 NW2d 799, 803 (Wis. 1979) (recognizing that this rule has been applied in three opinions of the Supreme Court of the United States). The issue is not whether the City initially could have rejected DFASS's proposal, but whether DFASS can be deprived of its rights to the completed contract by the City's purported cancellation. Several provisions of

law refer to the routine reservation of the right to reject all proposals or cancel an invitation prior to official acceptance of any proposal. OCGA § 36-91-20 (c); City Charter § 6-402 (c); City Code § 2-1194. See also 1 Bruner & O'Connor, supra at § 2:135; *Northeast Miss. Community College Dist. v. Vanderheyden Constr. Co.*, 800 FSupp. 1400, 1402 (N.D. Miss. 1992). However, "[w]here the municipal authority is authorized to reject any and all bids in lieu of awarding the contract to the lowest responsible bidder, having made the award, it may not then reject all bids and readvertise the project. [Cits.]" 10 McQuillin, supra. See also *Northeast Miss. Community College Dist. v. Vanderheyden Constr. Co.*, supra; *Donahue v. Bd. of Levee Commissioners of the Orleans Levee Dist.*, 413 S2d 488, 492 (La. 1982). Once the City accepted DFASS's proposal in accordance with OCGA § 36-91-21 (c) (1) (C), the reserved right to reject all bids or cancel the solicitation "had not been exercised and it was no longer operative. . . . Simply put, the [City] had communicated its acceptance of [DFASS's] offer and revocation was not possible." *Northeast Miss. Community College Dist. v. Vanderheyden Constr. Co.*, supra at 1402.

Under the Construction Law, the City has a responsibility to obtain any revisions in competitive sealed proposals prior to selection of the responsible and responsive proponent with the most advantageous proposal. OCGA § 36-91-21 (c) (2). See also City Code § 2-1189 (f). After those revisions, the City still is not obligated to make any selection, and may reject all proposals or cancel the solicitation when such action is in the City's best interests. However, once a proponent is selected as contemplated by OCGA § 36-91-21 (c) (1) (C), the award of a contract is complete, and the highest ranked offeror cannot be put through either another competitive solicitation process or a second round of negotiations, offers and counter-offers. At that point, the City is limited to the usual contractual defenses and remedies.

The consequences of the majority's rejection of this statutory scheme are readily apparent in this case. DFASS has spent years complying with the competitive solicitation procedures chosen by the City, being awarded the contract under controlling statutory authority, and defending that award. Appellees admit that the reasons for the purported cancellation were the uncertain duration of the litigation with ADF and improvement of market conditions. Where, as here, a public entity accepts a competitive proposal and later rejects it because of the potential for a better offer or due to legal action by another offeror, that public body "has acted arbitrarily and capriciously and rescission is ineffective. [Cit.]" *Northeast Miss. Community College Dist. v. Vanderheyden Constr. Co.*, supra at 1404. Thus, it is clear that the City arbitrarily refuses to prepare, and the Mayor refuses to sign, a formal written contract. Under these circumstances, "[t]he procedure for the advertising for bids for supplies or

services to the [City has been treated as] a mockery. . . ." *United States v. Purcell Envelope Co.*, supra. The majority sanctions that mockery, but I cannot. Because DFASS has a clear legal right to the formal written execution of the already existing contract, it is entitled to a writ of mandamus and, therefore, I strongly dissent to the affirmance of the trial court's judgment.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED MAY 14, 2007 —
RECONSIDERATION DENIED JUNE 25, 2007.

*Mary C. Cooney, Bauer & Deitch, Henry R. Bauer, Jr., Bondurant, Mixson & Elmore, Emmet J. Bondurant, Michael B. Terry*, for appellant.

*Linda K. DiSantis, Robert B. Caput, Michael S. Fineman*, for appellees.