THE SENATE OF THE LEGISLATURE OF AMERICAN SAMOA, LETULI TOLOA, in his capacity as Senate President, and TUILEFANO VAELA`A and TUANA`ITAU TUIA, in their capacities as Senators, Plaintiffs

v.

A.P. LUTALI, Governor of American Samoa, MALAETASI TOGAFAU, in his capacity as Attorney General of American Samoa, AITOFELE SUNIA, Treasurer of American Samoa, OPA JOSEPH IULI, Director of Program Planning and Budget Development, and SAPINI SIATU`U, Director of Human Resources, Defendants

High Court of American Samoa
Trial Division

CA No. 40-94

March 1, 1995

Before RICHMOND, Associate Judge, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel:        For Plaintiffs, Arthur Ripley, Jr., Counsel for the Senate, and Gata E. Gurr, Legislative Counsel
For Defendants, Jennifer L. Joneson, Assistant Attorney General, and Elvis R.P. Patea, Assistant Attorney General

This case is about power--constitutional power to expend public funds and constitutional constraints on that power. Plaintiffs, who are Senators in the bicameral Legislature of American Samoa ("Legislature"), consisting of the Senate and the House of Representatives, charge that defendants, who are officials of the Executive Branch ("Executive") of the American Samoa Government ("ASG"), proposed to have the Executive encroach upon the

127

constitutional prerogative of the Legislature to appropriate public funds prior to expenditure and seek declaratory relief to enjoin these Executive officials from such action.

## BACKGROUND

In March 1994, defendant A.P. Lutali, the Governor of American Samoa ("Governor"), announced his plan to effectuate salary step increments ("step increments") to qualified ASG career service employees. These employees had not received step increments in fiscal years 1989, 1990, 1991, 1992 and 1993, due to a freeze by gubernatorial Executive Order No. 7-1989 ("Executive Order No. 7-1989"), issued by the preceding governor on October 18, 1989. Fiscal year 1994 is now added to the list. The Governor's plan directed that salaries be immediately raised to the levels where they would have been had the step increments been operative during fiscal years 1989, 1990, and 1991. The estimated cost of this proposal was $2.1 million.

In response, plaintiff Letuli Toloa, the President of the Senate ("President"), expressed concern that the proposed step increments were not funded through proper legislative channels and, therefore, could not be lawfully implemented.

On March 14, 1994, the President filed this action and obtained a preliminary injunction. On June 14, 1994, plaintiffs submitted the amended complaint on which this action now proceeds, adding Senators Tuilefano Vaela`a and Tuana`itau Tuia as plaintiffs and seeking a permanent injunction. The amended complaint also asserted that defendants had authorized the disbursement of funds for the payment of ASG's past due debts to vendors without proper legislative appropriation.

On August 30, 1994, the Court granted defendants' motion to dismiss with respect to the individual plaintiffs' standing to sue as taxpayers. However, the Court also ruled that the plaintiffs as Senators had standing to sue as legislators. The Court further held that, although the Governor had withdrawn immediate implementation of his step increment plan, the case was not moot, and that it would not be dismissed for plaintiffs' failure to join ASG career service employees and vendors as parties to the action.

Trial began on September 2 and concluded on September 7, 1994.

## ISSUES

The main issues in this case are not whether ASG employees deserve step increments from previous fiscal years or whether ASG vendors are entitled to payment of contracts entered in previous fiscal years. Rather, the issues are whether unilateral executive action granting employees these past fiscal year step increments or paying any past fiscal-year vendor contracts violate the Revised Constitution, laws and administrative rules of American Samoa.

## DISCUSSION

Plaintiffs assert that defendants, acting on the Executive's behalf, would violate the Revised Constitution, laws and administrative rules of American Samoa if they pay employee step increments scheduled in previous fiscal years or past vendor contracts unless the Legislature provides funds for such payments either by reprogramming funds appropriated by the fiscal year 1994 Appropriations Act ("1994 Act") for such purposes, or by appropriating funds from supplemental sources during the fiscal year for such purposes.

On the other hand, defendants claim that the Executive has the authority to spend public funds without a specific appropriation as long as the expenditures do not exceed the 1994 Act's total appropriation.

The dispute over the proper means to spend public funds on step increments is clearly defined by the following correspondence. In a letter to the Governor, dated February 15, 1994, the President and the Speaker of the House of Representatives of the Legislature stated:

> The appropriation bills which contained the increments of past years ended their effectiveness at the conclusion of those fiscal years. Therefore, the only increment outstanding, and one which we can pay, is that of the current fiscal year, 1994. The current budget does not contain any appropriation for past increments.

In a letter to the Governor, dated February 28, 1994, they added:

> No funds have been appropriated in fiscal year 1994 for the payment of "past due" government employee increments.

> While your decision and plan is commendable, and, appears to be made in the interest of government employees, we believe that this impending expenditure for "past" pay increments is not in accordance with the law, because funding through sufficient

129

revenue measures must first be appropriated for this unbudgeted expenditure.

In a letter to the President and the Speaker, dated March 1, 1994, the Governor responded:

> . . . I will proceed with my administration to pay retroactive salary increments to the workers of ASG who were deprived of such increments in the past five years as planned for next week. I feel that the legal, moral, social, and financial obligations of this Government to its workers supersede any differences we may have in the interpretation of our constitutional mandates as separate branches of the American Samoa Government.

> . . . I disagree with you that I will be violating the appropriation act of the Fiscal Year 1994 by paying these past due increments. I . . . am quite satisfied that I will not create an overrun of the totals that the Fono passed, and signed into law by the Lieutenant Governor. When I overrun those totals, there is a violation.

Although the Governor and the other defendants believed that they were fulfilling legal, moral, social, and financial obligations, we are only addressing legal obligations in this case. The Governor and the other defendants were correct that an overrun of the total amount appropriated by the Legislature would be a violation of law, but they were incorrect in concluding that expending funds for past step increments without proper current appropriations would not be a violation of the Revised Constitution, laws and administrative rules of American Samoa.

*1. ASG has no legal obligation to pay step increments from past fiscal years.*

■ ASG does not have a legal obligation to pay step increments to its employees for fiscal years 1989 through 1994. First of all, it is not mandatory under the laws of American Samoa to pay annual step increments to its employees. The law merely states: "A compensation plan shall be established for the career service . . . [and] shall provide for maximum and minimum salary and wage rates and such intermediate steps *as seem appropriate*." A.S.C.A. § 7.1001(a) (emphasis added). The law further provides: "The government shall adopt an incentive program to provide a method of recognizing employees who show exceptional resourcefulness or skills, or perform exceptional acts." A.S.C.A. § 7.1003. Neither of these statutory provisions requires ASG to pay annual

step increments to its employees.

Secondly, eligibility for step increments is contingent on the completion of a personal evaluation in accordance with the procedures outlined. in A.S.A.C. § 4.0409, which in immediately relevant part states:

> (a) Every employee is entitled to an annual step-increment increase
> . . .
> (d) . . . [If] an employee performance evaluation . . . [is] completed . . .
> (1) If the performance evaluation is satisfactory or better, the employee will receive a step-increment . . .
> (3) *If no performance evaluation is received, no increment will be processed . . .*

A.S.A.C. § 4.0409 (emphasis added).

Under this administrative rule, which was adopted under the Administrative Procedures Act, A.S.C.A. §§ 4.1001 *et seq.* and, thus, has the force and effect of law, A.S.C.A. § 4.1009(c), completion of a performance evaluation with a satisfactory or better score is a condition precedent for an ASG employee to be eligible for a step increment. The evidence shows that during fiscal years 1989 to 1993, performance evaluations were completed only for some government employees. Clearly, this necessary condition precedent to process step increments was not generally met for these fiscal years.

Finally, even if any ASG employees were given satisfactory or better performance evaluation and were otherwise eligible for a step increment in any fiscal year from 1989 to 1993, any obligation that might have existed to pay the step increments was nullified by Executive Order 7-1989. This Executive Order directed a general freeze "on all annual increments for all government employees irrespective of funding source."

## 2. *An appropriation terminates at the end of the fiscal year.*

█ It is a well-established principle that appropriated funds that are not spent at the end of the fiscal year in which they were appropriated, revert back to the general fund and cannot be spent by the Executive branch without further appropriation by the Legislature. In general, money appropriated for a particular budgetary purpose, which remains unexpended and unobligated at the expiration of the appropriation legislation, lapses, *Hilton Construction Co., Inc. v. Rockdale County Bd.*

131

*of Ed.*, 266 S.E.2d 157, 162 (Ga. 1980), and becomes public revenue under the Legislature's plenary control. *State v. Duxbury*, 160 N.W.2d 88, 92 (Neb. 1968) (court found agency that authorized the expenditure of state funds without a specific appropriation in violation of the state constitution and further held that the funds would be unavailable to the agency unless reappropriated by the legislature).

■ It is evident from the administrative rules of American Samoa, which have full force and effect of the law under A.S.C.A. § 4.1009(c) when they are adopted pursuant to the Administrative Procedures Act, §§ 4.1001 *et seq.*, that the authority to spend public funds "is available for obligation only during a specified fiscal year and expires at the end of that time." A.S.A.C. § 5.0103(16)(B)(I).

Budget authority, which is the authority to enter into obligations that will result in immediate or future outlays of Government funds, is classified into various periods of availability. A.S.A.C. § 5.0103(16). In 1-year accounts, the unobligated balance, which is the portion of budget authority that has not yet been obligated, expires at the end of the fiscal year. A.S.A.C. § 5.0103(13)(B)(I).

"All annual appropriations lapse at fiscal year end." American Samoa Govt., *Comprehensive Annual Financial Report*, at 43 (1989). "In accordance with the annual budget law, any uncommitted appropriations for operating or maintenance expenditures automatically lapse at the close of the fiscal year . . . ." *Id.* at 44.[1]

Under federal law:

> the balance of an appropriation or fund limited for obligation to a definite period is available only for payment of expenses properly incurred during the period of availability or to complete contracts properly made within that period of availability . . . However, the appropriation or fund is not available for expenditure for a period beyond the period authorized by law.

---

[1] The language quoted in this paragraph has been included in more recent Comprehensive Annual Financial Reports. See American Samoa Govt., *Comprehensive Annual Financial Report*, at 43-44 (1990) and American Samoa Govt., *Comprehensive Annual Financial Report*, at 47-49 (1991).

31 U.S.C. § 1502(a). 31 U.S.C. § 1502(b)[2] states in relevant part that § 1502(a) requires "that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period."

A.S.C.A. § 10.0602, which mirrors 31 U.S.C. § 1502(b), states: "Any provision of law which requires unexpended funds to return to the general fund at the end of the fiscal year shall not be held to affect the status of any lawsuit or right of action involving the right to those funds."

■ Once the Legislature appropriates funds for a budgetary purpose defined in the annual budget acts, the funds are only available for the term stated in the annual act and no longer, unless expressly provided by the Legislature. For fiscal years 1989 to 1994, the Legislature only appropriated funds for step increments for each specific fiscal year. Once the Governor chose not spend the money by the end of the fiscal year, the authorizing appropriation and the funds returned to the general fund. Previous year step increments can be paid in a future fiscal year only by an express appropriation by the Legislature to pay for past year step increments.

3. *The Legislature did not appropriate fiscal year 1994 funds to pay step increments from past fiscal years.*

The Legislature did not specifically appropriate funds in 1994 to pay prior fiscal year step increments. Without this appropriation, the Executive has only limited authority to reprogram current appropriations for this purpose.

■ The Executive has discretion to reprogram appropriated funds, but "[a]ll reprogrammings [of budgeted funds] which exceed $25,000 or 30% of the line account must be approved by the Legislature." A.S.A.C. § 5.0135(g). Any other expenditure needs an appropriation by the Legislature or it is in violation of the laws of American Samoa. Thus, program managers are given some "flexibility to deal with contingencies that were not anticipated during the regular budget development process" but "[t]his flexibility must be dealt with prudently and in consideration of

---

[2] Under federal law, the only instances where an appropriation in a regular, annual appropriation law may be construed to be permanent or available continuously are where the appropriation is for rivers, harbors, lighthouses, public buildings, or the pay of the Navy or Marine Corps, or where the appropriation expressly provides that it is available after the fiscal year covered by law in which it appears. 31 U.S.C.S. § 1301(c).

the policymakers' and the people's wishes." A.S.A.C. § 5.0134(b).

Furthermore, the budgetary administrative rules expressly provide that "[n]o territorial agency may increase the salaries of its employees, employ additional employees, or expend money or incur any obligations except in accordance with law and with a properly approved operations plan . . . ." A.S.A.C. § 5.0138(a).

The evidence is clear that no line account or similarly identified portion of the 1994 Act appropriated any amount for the purpose of paying $2.1 million for past fiscal year step increments. Also, the Governor did not include information to pay such step increments in the fiscal year 1994 budget plan. Thus, no funds may lawfully be expended for these purposes in excess of the Executive's discretionary reprogramming authority without the Legislature's prior concurrence.

*4. Executive cannot spend without appropriation.*

■ The Executive does not have authority to pay anything in excess of an appropriation without express language granting such action. *Bradley v. United States*, 98 U.S. 105, 107 (1878).

■ The Executive's power to fix employees' salaries is limited by the amount appropriated by the Legislature. *See McCarthy v. City of Malden*, 22 N.E.2d 104, 108 (Mass. 1939) (city employee entitled only to the amount appropriated and any payment of expenses incurred during the preceding year would be unauthorized); *Remington Typewriter Co. v. Revere*, 188 N.E. 634 (Mass. 1934).

A.S.C.A. § 10.0601(a), similarly to the federal Anti-Deficiency Act, provides: "No officer . . . may make or authorize an expenditure from or create or authorize an obligation under any appropriation or fund in excess of the amount available therein . . . ."

The United States Government Accounting Office (GAO) has concluded that ASG has disbursed and expended funds in excess of authorized amounts and without proper appropriations and recommended that ASG enforce A.S.C.A. § 10.0601 in an effort to prevent further obligations and expenditures in excess of appropriations. U.S. Govt. Accounting Office, *American Samoa Inadequate Management and Oversight Contribute to Financial Problems*, at 40-41 (1992). Any ASG employee who violates this law is subject to disciplinary suspension without pay or removal from office. Further, any ASG employee who knowingly violates § 10.0601(a)

134

can be convicted of a felony. A.S.C.A. § 10.0601(c).

GAO has also concluded that a main reason why ASG had increased the deficit from $500,000 in 1987 to over $17 million in 1991 was because the laws prohibiting the obligation or expenditure of funds in excess of amounts appropriated have been routinely disregarded, regulations have been ignored, and responsible officials have not been held accountable. *Id.* at 3.

## 5. *Past Due Debts to Vendors*

■ If appropriated funds are available for payment of a particular vendor contract and are properly obligated under the procurement process before the end of the current fiscal year, the obligated funds will carry forward until the obligation is paid rather than revert to the general fund. A.S.A.C. § 5.0103(13)(A). Otherwise, the Executive has no legal authority to disperse public funds to pay past due debts to vendors incurred in a prior fiscal year without a current fiscal year appropriation for such purposes and timely completion of the procurement process. Thus, any expenditure by the Executive of funds which have not been properly obligated and carried forward in this manner to pay past due debts to vendors would be in violation of the administrative rules of American Samoa.

## 6. *Separation of Powers*

We now reach the fundamental principle involved in this case, the doctrine of the separation of powers between the Legislature and the Executive for the lawful expenditure of public funds. The authorities cited in the foregoing discussion are designed to support and protect this cherished, constitutional dogma in large measure. This doctrine defines the roles and tasks to be performed by the Legislature and the Executive in the budgetary process and is clearly embodied in the Revised Constitution of American Samoa, supplemented by the laws of American Samoa.

Article II, § 1 of the Revised Constitution confers the authority to pass legislation upon the Legislature, while article IV, § 10 confers upon the Governor, as head of the Executive, the power to recommend laws to the Legislature for its consideration. Regarding budgeting and appropriations, Article II, § 1 of the Revised Constitution states:

> (c) Money bills enacted by the Legislature of American Samoa shall not provide for the appropriation of funds in excess of such

amounts as are available from revenues raised pursuant to the' tax laws and other revenue laws of American Samoa. Prior to his submission to the Secretary of the Interior of requests for Federal funds necessary for the support of governmental functions in American Samoa, the Governor shall prepare a preliminary budget plan. He shall submit such plan to the Legislature in joint session for its review and approval with respect to such portions as relate to expenditures of funds proposed to be appropriated by the Congress of the United States.

(d) Legislation involving the expenditure of funds other than as budgeted shall include revenue measures to provide the needed funds.

The laws further refine the roles of both the Governor and the Legislature in the budgetary process. A.S.C.A. § 10.0502 requires the Governor to "direct the preparation and administration of the territorial budget." This section further requires the governor to "provide information and propose a financial plan to the Legislature," but it is the Legislature who, upon consideration of such a plan, decides the nature, manner and amount of expenditures.

A.S.C.A. § 10.0506(a) requires the Governor to "formulate the program and financial plan to be recommended to the Legislature [and] . . . include recommended goals and policies, recommended plans to implement the goals and policies, recommended budget for the succeeding fiscal year, and recommended revenue measures to support the budget." The Governor is further required to "present the proposed comprehensive plan and financial program in a message to the Legislature. The message must be preceded by 1 week by a budget document which shall contain the Governor's recommended goals, plans, and appropriations." A.S.C.A. § 10.506(b).

The Legislature shall "consider the program and financial plan recommended by the Governor," and then shall "adopt programs and alternatives to the plan recommended by the Governor as it deems appropriate" and shall "adopt legislation to authorize the implementation of a comprehensive program and financial plan." A.S.C.A. § 10.0503. The Legislature shall "determine the comprehensive program and financial plan to support the services to be provided the people of the territory; provided, however, that in its determination authorized expenditures shall not exceed receipts and surpluses." A.S.C.A. § 10.0507. The Legislature shall have "full authority and control of the request, approval, and

136

disbursement of funds in its budget." A.S.C.A. § 10.0601(a).[3] '

■ The Revised Constitution and laws are clear that the Executive recommends and proposes a annual budget to the Legislature, and the Legislature in turn has the authority to appropriate public funds to implement that budget as it deems necessary.

## REMEDIES

We make the following declarations:

(a) Annual step increments for ASG employees that were not paid in fiscal years 1989 through 1994 are not ASG's legal obligations.

(b) The unbudgeted expenditure of current fiscal-year revenues to pay prior fiscal-year step increments would be unconstitutional and unlawful without further current appropriations by the Legislature for this purpose, in that they would exceed the role and powers assigned to the Executive and would infringe upon the role and powers of the Legislature, and would violate the constitutional and lawful constraints, requirements, and procedures applicable to the budgeting, appropriation, and expenditure of ASG's funds.

(c) The unbudgeted expenditure of current fiscal year revenues to pay ASG's unobligated, past due debts to vendors, not previously and properly obligated during the fiscal year in which the debt was incurred, would be unconstitutional and unlawful without further current appropriations by the Legislature for this purpose, in that they would exceed the role and powers assigned to the Executive and would infringe upon the role and powers of

---

[3] The American Samoa annual budget is compiled from budgets generated by individual departments within a budget ceiling established by the Budget Office. After the Budget Office approves the budget, it is presented to the Governor for signature and then presented to the Legislature in September of each year for review, modification, and approval.

The Budget Office shall review each agency's operations plan to determine that it is consistent with the policy decisions of the Governor and appropriations by the Legislature . . . and that appropriations have been made for the planned purpose and will not be exhausted before the end of the fiscal year. A.S.C.A. § 10.0508(c)(1).

the Legislature, and would violate the constitutional and lawful constraints, requirements, and procedures applicable to the budgeting, appropriation, and expenditure of ASG's funds. Since a judgment for money damages would be an inadequate remedy for the plaintiffs, we grant, pursuant to A.S.C.A. § 43.1302, plaintiffs' request for a permanent injunction prohibiting defendants, their successors in office, and their agents, employees, servants, attorneys, and all persons or entities in active concert or participation with them, from the disbursement of ASG's funds to pay for retroactive step increments to ASG employees for fiscal years 1989, 1990, 1991, 1992, 1993, and 1994, or to pay any debt to a vendor from funds not properly obligated from appropriations for the fiscal year in which the debt was incurred, without current appropriations by the Legislature for such purposes.

It is so ordered.